## MILLER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1921.)

No. 1899.

1. Bankruptcy ⊙⟳140(3)—Borrowed money should have been scheduled and turned over to trustee, notwithstanding agreement with lender as to use.

Where a bankrupt had borrowed money on a mortgage, and agreed in writing with the lender that it would be used to build a house on the mortgaged land, but there was no agreement to hold it as trustee for the

lender, the lender had no claim to the money until he exhausted the land covered by his mortgage, and it was the duty of the bankrupt to include it in his schedule and turn it over to the trustee in bankruptcy.

2. **Bankruptcy ⊕⇒496—Conspiracy ⊕⇒48—On trial for conspiracy to conceal assets, and aiding and abetting, evidence held to make question for the jury.**

On the trial of a bankrupt's attorney for conspiring with the bankrupt to conceal his assets from the trustee, and for aiding and abetting the bankrupt to conceal his assets, evidence *held* sufficient to justify the court's refusal to direct a verdict of acquittal.

3. **Criminal law ⊕⇒478(2)—Witness properly permitted to express opinion as to handwriting.**

A witness, who testified that he had had some occasion to examine handwritings, and had made some study of it, and sometimes had been called on to make comparisons of different handwritings, *held* properly permitted to express an opinion that an alleged change in a deposit slip was in defendant's handwriting.

4. **Criminal law ⊕⇒155—Prosecution for conspiracy not barred, when overt acts committed within the period of limitation.**

Conceding that the limitation of one year prescribed in the bankruptcy statute is applicable to a conspiracy to commit an offense created by that statute, the prosecution was not barred, where there was evidence of overt acts within 12 months before the finding of the indictment.

5. **Conspiracy ⊕⇒40—Conspirator remains such until some affirmative act of withdrawal.**

One who enters into an unlawful conspiracy is held to remain in it until he does some affirmative act of withdrawal.

6. **Conspiracy ⊕⇒40—Denial of existence of conspiracy did not constitute withdrawal therefrom.**

The testimony of a bankrupt's attorney before the referee in bankruptcy, in which he denied the existence of a conspiracy to conceal assets from the bankrupt, was not a withdrawal from the conspiracy.

7. **Criminal law ⊕⇒493—Where testimony of witness showed essential facts, his opinion that there was no conspiracy did not prevent conviction.**

Where a bankrupt testified to every fact necessary to convict him and his attorney of conspiracy to conceal assets, his expressed opinion that what was done did not constitute concealment and conspiracy did not prevent a conviction of the attorney.

8. **Criminal law ⊕⇒815(5)—Instruction as to effect of action on honest advice of counsel properly refused.**

On the trial of a bankrupt's attorney for conspiracy to conceal assets, an instruction that action of the bankrupt on the advice of counsel honestly given would exonerate him and defeat the charge of conspiracy was properly refused, because it did not express the additional requisite that the bankrupt must have honestly taken the advice and acted upon it.

9. **Conspiracy ⊕⇒38—Criminal law ⊕⇒32—Advice of counsel not generally a defense; advice of counsel and good faith held a defense.**

As a general rule, advice of counsel is no excuse for violation of the law; but where the question is one of intent, as in the case of a conspiracy, the advice and good faith of the defendant is a defense to be considered by the jury.

10. **Criminal law ⊕⇒829(1)—Not error to refuse to repeat instructions already given.**

Where the court had already given an instruction included in the requests submitted by defendant, it was not error to refuse to repeat it.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. **Criminal law ⬤⟶814(5)—Instruction properly refused as inapplicable, in prosecution for conspiracy with bankrupt to conceal assets, etc.**

On a trial for conspiring with a bankrupt to conceal assets from the trustee, and for aiding and abetting the concealment, an instruction that the undisputed evidence showed the trustee had knowledge of the funds charged to have been concealed, and that no discharge had been granted, and that under such facts the indictment must fall and the verdict be not guilty, was properly refused as being inapplicable, where the trustee denied knowledge that the bankrupt was the owner of the fund, and there was no evidence to the contrary.

12. **Criminal law ⬤⟶622(2), 968(1)—Conspirators may be separately tried, and judgment need not be arrested until second defendant is tried.**

One of two defendants charged with conspiracy may be separately tried, and the judgment need not be arrested until the other is tried.

13. **Conspiracy ⬤⟶23—Conspirator cannot be convicted, if other conspirator acquitted or indictment nol. pros'd.**

If one of two defendants charged with conspiracy is acquitted, the other must also be acquitted; and if the charge against one be nol. pros'd, the other cannot afterwards be convicted.

In Error to the District Court of the United States for the Western District of South Carolina, at Rock Hill; Henry H. Watkins, Judge.

A. H. Miller was convicted of conspiracy to conceal a bankrupt's assets, and aiding, abetting, and counseling the commission of the offense of concealment, and he brings error. Affirmed.

The witness John T. Roddey testified that he had had some occasion to examine handwritings; that he had not had a great deal of experience, and had not given much attention to the matter, and had had no experience of examining handwritings, except for his own satisfaction; that for his own satisfaction he had studied books on the subject, and read two or three articles: that he looked into the subject enough to enable him to identify different handwritings; that he did not consider himself an expert, but might be called an expert, but not of the first class; that he could identify handwritings as well as the ordinary man, and probably a little better; and that sometimes, when he happened to be around the bank he would be called on to make comparisons of different handwritings.

Defendant requested an instruction that the undisputed evidence showed that the trustee in bankruptcy had knowledge of the funds charged to have been concealed before his appointment and subsequent thereto, and that no discharge had been granted the bankrupt, and that under such fact the indictment must fall and the verdict be not guilty.

John Gary Evans, of Spartanburg, S. C., and P. A. Bonham, of Greenville, S. C. (C. C. Wyche, of Spartanburg, S. C., on the brief), for plaintiff in error.

J. William Thurmond, U. S. Atty., of Edgefield, S. C. (J. E. Marshall, Asst. U. S. Atty., of Greenville, S. C., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

WOODS, Circuit Judge. The first count of the indictment, found October 16, 1920, charges M. L. Hayes and A. H. Miller with conspiracy knowingly and fraudulently to conceal from the trustee of the bankrupt, Hayes, $2,500 in money, the property of Hayes. The specific overt acts charged were the concealment by Hayes, the delivery of the

money by Hayes, and its reception by Miller with the fraudulent intention of both to convert it to their own use, and the giving of false testimony by Miller before the referee in bankruptcy with respect to the transaction. The second count charges the bankrupt, Hayes, with fraudulent concealment of the money from the trustee, and Miller with aiding, abetting, and counseling him in the commission of the crime.

Miller was tried separately and convicted on both counts. Error is assigned in the refusal to direct a verdict of acquittal, in the admission of testimony, in the instructions to the jury, and in refusal to arrest the judgment. Hayes was used as a witness by the government, and Miller testified on his own behalf. On vital points their testimony was in direct conflict.

[1, 2] Miller was the attorney who made out and filed Hayes' petition in bankruptcy on September 2, 1919. As to the source of the fund, Hayes testified that before the bankruptcy he borrowed about $6,000 from one Cudd on his bond and mortgage, and deposited the money in the First National Bank of Gaffney. He agreed in writing with Cudd that the money should be used in building a house, and the account was kept in the name of "M. L. Hayes, Trustee." No written agreement with Cudd was introduced, and there is nothing to show that Cudd retained any control of the fund, or that Hayes had agreed to hold it as trustee for Cudd. Assuming that Hayes had made a valid promise to expend the money in the building of a house on the mortgaged land, the house, if built, would have been his property, subject to the mortgage. It was obvious, when bankruptcy intervened, that the money was the property of Hayes, and that Cudd would have no claim to it, in law or equity, until he had exhausted the land covered by his mortgage. The duty of Hayes to include it in his schedule and turn it over to the trustee in bankruptcy was therefore perfectly clear to the most ordinary understanding. The testimony of Hayes is undisputed that there was no special reason for depositing the money as trustee, that he considered the money his, and that he used it as he pleased. The proof was that Cudd has never made any claim to the money.

Hayes gives this account of the dealings of himself and Miller:

"I employed Mr. A. H. Miller as my attorney when I went into bankruptcy. I talked the matter over on Sunday before I filed the petition in bankruptcy. At that time I had less than $3,000 in the First National Bank. I did not make return of this money in my schedule. Mr. Miller asked me what money I had. I told him what I had, and how I came in possession of it, and he said it would not be necessary to give that in my schedule. At that time my wife was sick in the hospital, and I needed some money to pay her bills and expenses, and that is why I did not give it in. I was advised by Mr. Miller not to. He advised me to give him the money, and I did. I turned over to him $2,500. I gave it to him by check. Mr. Miller assisted me to go into bankruptcy. He was to take the money, and give it to me along as I needed it to pay expenses and my wife's hospital bills. I asked him what he would charge me, and he said, 'Well, I will make that satisfactory with you.' I suppose that was to come out of the $2,500."

Hayes further testified that Miller had paid him for his own use about $700 of the fund, still holding about $1,800, which he had refused to pay over. Miller met this testimony by his statement that he had cashed the check for $2,500 for Hayes, and paid him the money,

before he knew of his insolvency or contemplated bankruptcy; that he did not put the money in the schedule, because Hayes told him it was a trust fund belonging to his wife; that he had none of it in his possession; that the money paid to Hayes from time to time after the bankruptcy was money put in his hands by the father of Hayes for the purpose of aiding his son in his difficulties.

On the issues thus made the government relied for corroboration of Hayes on letters from Miller to Hayes, deposit slip taken by Miller in his own name for the $2,500 check of Hayes, and evidence tending to show that this slip was turned over to Hayes by Miller after he had changed it so as to read, "Deposited by A. C. Miller for M. L. Hayes," and had written at the bottom of it, "not subject to check except by M. L. Hayes," and inconsistencies in the testimony of Miller on the trial and at the hearing before the referee in bankruptcy. This statement is sufficient to show that there was no error in refusing to direct a verdict of acquittal for failure of evidence.

[3] The opinion of John T. Roddey that the alleged change in the deposit slip above set out was in the handwriting of Miller was properly admitted. Benedict v. Flanigan, 18 S. C. 506, 44 Am. Rep. 583; State v. Ezekiel, 33 S. C. 115, 11 S. E. 635; Tower v. Whip (W. Va.) 63 L. R. A. 937, note; Miller v. Shoe Co., 89 S. C. 530, 534, 72 S. E. 397, Ann. Cas. 1913B, 106.

[4-6] The statute of limitations afforded no ground for direction of a verdict, even if the limitation of one year prescribed in the bankrupt statute be considered applicable to a conspiracy to commit an offense created by that statute. The offense of conspiracy was not completed, and therefore was not indictable until the commission of an overt act, and the statute did not begin to run until the last overt act done while the conspiracy was in existence. Brown v. Elliott, 225 U. S. 392, 401, 32 Sup. Ct. 812, 56 L. Ed. 1136. If the conspiracy was formed, as the jury found it was, there was evidence of overt acts within 12 months before the finding of the indictment. When the unlawful agreement is proved, one who enters into it is held to remain in until he does some affirmative act of withdrawal. Hyde v. U. S., 225 U. S. 347, 369, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. The testimony of Miller before the referee was not a withdrawal from the conspiracy, but a denial of its existence. If, however, it had been a withdrawal, the conspiracy, if it ever existed, was then complete, and the indictment was within the statutory period.

[7] It is insisted there could be no finding of a conspiracy on the testimony of Hayes although corroborated, because he testified that he had never concealed his assets from the trustee in bankruptcy, and had never conspired to do so. Hayes had testified to every fact necessary to convict him and Miller of the offense charged, and his opinion that this did not constitute concealment and conspiracy, of course, was not controlling. He testified to facts which constituted the offense, and thereby admitted his guilt.

The District Judge instructed the jury explicitly that, although one is presumed to intend the natural consequences of his act, yet that they could not convict (1) if the fund received by Miller from Hayes was not the property of Hayes, but of his wife, or some one else; or (2) if

Miller believed it to be the property of some one else, although it was in fact the property of Hayes. Since Miller was the attorney of Hayes, this instruction meant that, if Miller honestly advised Hayes to turn over the fund to him, and not to the trustee, he could not be convicted. The additional instruction was given that advice of counsel may be considered on the issue of intent of Hayes, the other alleged conspirator.

[8, 9] The request to charge that action of Hayes on the advice of counsel honestly given would completely exonerate and eliminate Hayes, and thus defeat the charge of conspiracy, was properly refused, if for no other reason, because it did not express the additional requisite that Hayes must honestly have taken the advice and acted upon it. The general rule is that advice of counsel is no excuse for violation of law. 8 R. C. L. 123; 16 C. J. 85. But where the question, as in this case, is one of intent, the advice and the good faith of the defendant is a defense to be considered by the jury. 12 Cyc. 156, and citations; State v. O'Neill, 147 Iowa, 513, 126 N. W. 454, 33 L. R. A. (N. S.) 788, Ann. Cas. 1912B, 691; Williamson v. U. S., 207 U. S. 425, 453, 28 Sup. Ct. 163, 52 L. Ed. 278. The jury was so instructed.

[10] The instruction was given that, if the fund involved was held by Hayes in trust for another, it was not a part of the bankrupt estate, and the defendant could not be convicted. There was no error in refusing to repeat the instruction in the requests submitted on the subject.

[11] The trustee denied knowledge that the bankrupt was the owner of the fund, and there was no evidence to the contrary. The request on that subject was therefore inapplicable.

[12, 13] The last error assigned is the refusal of the court to arrest or suspend judgment, on the ground that conviction of one of two defendants charged with conspiracy could not be the basis of judgment against him while the charge against the other was undisposed of. One of two defendants charged with conspiracy may be separately tried. If one is acquitted, the other must be acquitted also, since he cannot commit the offense alone; and if the charge against one be nol. pros'd the other cannot afterwards be convicted, because there is no pending charge against two. State v. Jackson, 7 S. C. 283, 24 Am. Rep. 476; Feder v. U. S., 257 Fed. 694, 696, 168 C. C. A. 644, 5 A. L. R. 370.

The rule that each of two persons charged with conspiracy may be tried separately negatives the proposition that judgment on the conviction of one must be arrested until the other is tried. What would be the effect of a future acquittal of Hayes, or a nol. pros. of the indictment as to him, it is not our province at this time to decide.

Affirmed.