**DECKER v. UNITED STATES.**

No. 5174.

Circuit Court of Appeals, Fourth Circuit.

Jan. 21, 1944.

See, also, 140 F.2d 378.

William D. Donnelly, of Washington, D. C. (Cummings & Stanley, of Washington, D. C., on the brief), for appellant.

William A. Paisley, Sp. Asst. to the Atty. Gen. (Bernard J. Flynn, U. S. Atty., and Ellis L. Arenson, Sp. Atty., Department of Justice, both of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Joseph Decker (hereinafter called Decker), in the United States District Court for the District of Maryland, was convicted under the second count of an indictment charging a violation of Section 403(e) of the Sixth Supplemental National Defense Appropriation Act of 1942, 56 Stat. 246, 50 U.S.C.A.Appendix § 1191 (e). Decker was executive vice president and general manager of Triumph Explosives, Incorporated, (hereinafter called Triumph), a war contractor. The specific

charge was that Decker, in that capacity, knowingly furnished to the Secretary of the Navy a statement of actual costs of production containing information which was false, misleading and material.

The important part of the statute upon which the indictment was based reads thus: "(e)   In addition to the powers conferred by existing law, *the Secretary of each Department shall have the right to demand of any contractor* who holds contracts with respect to which the provisions of this section are applicable in an aggregate amount in excess of $100,000, *statements of actual costs of production and such other financial statements, at such times and in such form and detail, as such Secretary may require.   Any person* who willfully fails or refuses to furnish any statement required of him under this subsection, or *who knowingly furnishes any such statement containing information which is false or misleading in any material respect, shall, upon conviction thereof, be punished* by a fine of not more than $10,000 or imprisonment for not more than two years, or both.  The powers conferred by this subsection shall be exercised in the case of any contractor by the Secretary of the Department holding the largest amount of such contracts with such contractor, or by such Secretary as may be mutually agreed to by the Secretaries concerned."  (Italics supplied.)

Carl Zipf, a certified public accountant of the Price Adjustment Board of the Navy Department, went, in 1942, to the plant of Triumph and presented to Decker the following letter:

"Gentlemen:

"Triumph Explosives, Incorporated, is hereby requested (R. 64) to furnish the Navy Department with statements of actual costs of production under contracts with the Navy Department and such other financial statements in such form and detail as the Navy Department may specify. This request is made pursuant to the provisions of Title IV of the Sixth Supplemental National Defense Appropriation Act, 1942, Public Law, 528, 77th Congress, April 28, 1942.

"Mr. Carl H. Zipf, Supervising Auditor, is hereby designated as the representative of the Navy Department to receive such statements and to determine the times at which such statements may be furnished

and the form and detail thereof desired by the Navy Department.

"Very truly yours,
    "K. N. Rockey,
"Chairman, Price Adjustment Board."

Zipf also delivered to Decker a questionnaire, or letter of instruction, indicating what other information was desired by the Navy Department.

Decker informed Zipf that Triumph could not furnish an accurate statement of production costs on Navy contracts for the reason that Triumph's books did not segregate costs of production for Navy contracts from other contracts, but that these total costs were lumped together. Decker then referred Zipf to the books of Triumph as furnishing, in the absence of properly segregated accounts, the best available information as to the costs of production on Navy contracts.  In 1942, about 90% of Triumph's contracts arose out of business with the United States Government, while a vast majority of the government business was in connection with contracts with the Navy Department.

Zipf made a long and careful study of Triumph's books, extending over several days.  He then prepared, in the light of this study, a voluminous report which was duly delivered to the proper representatives of the Navy Department.  It was proved that items aggregating about $100,000 had been improperly charged, by Decker's instructions and authority, on these books, as proper expenditures for production costs, on behalf of Triumph. As a matter of fact, the money covered by these items had been falsely and fraudulently appropriated to the purely personal purposes of Decker and his accomplice and co-defendant, Kann.

Only two of Decker's contentions on this appeal call for any discussion.  Under the first of these contentions, it is claimed that Decker did not *furnish a statement* (as required by the statute) but that he merely gave to Zipf a leave and license to inspect the books of Triumph.  The second contention asserts that, even if a statement was furnished by Decker, this was not a statement of "actual costs of production" in connection with Navy contracts, owing to the lack of apportionment or segregation on these books of the false items to separate contracts, or at least to Navy contracts.   These items were all

lumped together in the total and general costs of production on all of Triumph's contracts.

These contentions were both found to be lacking in merit by the District Court. We are in hearty accord with Judge Chesnut's opinion. 51 F.Supp. 20.

■ In the Government's brief, are given the definitions of "furnish", taken from several dictionaries. Without analyzing these definitions, we can at least say that the word is not a term of art but is rather one of very broad and general denotation. It, in other connections, has always been so interpreted. See Bliss Co. v. United States, 248 U.S. 37, 45, 39 S. Ct. 42, 63 L.Ed. 112; Trope v. United States, 8 Cir., 276 F. 348; Wyatt v. Larimer & W. Irr. Co., 1 Colo.App. 480, 29 P. 906; State v. Freeman, 27 Vt. 520; Commonwealth v. School Board of Norfolk, 109 Va. 346, 63 S.E. 1081.

The statute specifies no special manner or form of statement, no particular method or means, written or oral, by which the statement is to be made or furnished. Zipf, in accordance with the letter that he presented, requested Decker for the required statement. Decker, in referring Zipf to Triumph's books, impliedly, at least, declared that these books (with all their imperfections on their leaves) constituted the best available information as to the desired production costs.

We think, within the purview of the statute, Decker clearly furnished a statement. We believe, further, so far as this case is concerned, that Decker's action here renders him criminally liable to the same extent as if, in response to Zipf's official request, Decker had manually delivered to Zipf the books of Triumph with the remark: "These books contain the statement that you wish."

■ Decker's second contention, we believe, is equally unsound. We cannot believe that because Triumph's books were badly kept, because these did not with precise accuracy reflect the costs of production, the books did not constitute, under the statute, a statement of the actual costs of production on Navy contracts. The statute did not prescribe or require any particular type of records to be kept by contractors, nor does the statute demand any specific method of accounting, either as to form or content. Evidently, then, Congress must have intended that statements of actual costs of production were to be gleaned from the best available records kept by the contractor in the regular course of business. It could not be said that these false charges on the books did not swell the actual costs of production on Navy contracts.

The two contentions of Decker, taken together, impress us as being highly technical. It would be indeed strange if the clear purpose of the statute could be thwarted· by poor book-keeping, by the mere commingling of costs of government and non-government contracts. Hardly would it lie in the contractor's mouth to say that the total costs, as thus figured, would be useless and of no consequence to the Government. · See Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607; United States v. Gilliland, 312 U. S. 86, 61 S.Ct. 518, 85 L.Ed. 598. Decker's contentions, if sound, would defeat the very purpose for which the statute was enacted and, further, would make evasion a matter of quite bland and utter childlike simplicity. Then, indeed, would the statute contain almost as many holes as an ordinary piece of Swiss cheese. Surely we cannot impute to Congress an intent to enact important war-time statutes of such a calibre, or in such a category.

■ Finally, we agree with Judge Chesnut that Decker was properly indicted and duly convicted under section (e) in connection with a statement of actual costs of production, and his activities did not fall solely within section 403(d), which merely makes the contractor's books open to government inspection and provides no penalty for false entries in these books.

The judgment of the District Court is affirmed.

Affirmed.