UNITED STATES v. ERIE BASIN METAL
PRODUCTS CO., Inc. et al.
Crim. No. 21312.

United States District Court
D. Maryland.
Aug. 12, 1948.

Hilary W. Gans, of Baltimore, Md., and Walter E. Tinsley, of Chicago, Ill., for Erie Basin Metal Products Co., Inc., Allen B. Gellman and Joseph T. Weiss.

Simon E. Sobeloff, of Baltimore, Md., for Harry S. Glick.

Eldridge Hood Young, of Baltimore, Md., for Henry W. Garsson and Murray W. Garsson.

**WILLIAM C. COLEMAN, District Judge.**

The Court has decided to grant the motions of the four defendants for transfer, and will now give, in as much detail as appears to be appropriate, its reasons for so doing.

There are six defendants in this case, five individuals and one corporate defendant. All of them except two individuals, Henry M. Garsson and Murray W. Garsson, have moved for transfer of the proceeding with respect to each of them to the District Court for the Northern District of Illinois, Eastern Division, relying upon the provisions of Rule 21 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. In support of these motions, these four defendants filed motions for bills of particulars, which, after hearing, were granted over the objection of the Government. After the Government had responded to this Court's order requiring it, as the result of these defendants' granted motions, to supply the requested particulars, these defendants filed additional motions for further particulars, to which the United States excepted. These exceptions were heard, and the Court concluded that there had been substantial compliance by the Government with the Court's order with respect to supplying the additional information to the defendants, and that, all in all, at that stage of the proceeding, the defendants had obtained from the Government all information which they could reasonably ask for under the circumstances.

Summarized, the basis for the motions to transfer the proceeding to the Northern District of Illinois, Eastern Division, is that the acts of the defendants alleged in the indictment as being offenses were of a continuing character; and that if any of-

Bernard J. Flynn, of Baltimore, Md., and Thomas A. Pace and Bernard J. Vincent, both of Washington, D. C., for the Government.

fense was committed by them in the Maryland District, it was also committed in the Northern District of Illinois, Eastern Division, that is, in Chicago. Further, it is claimed that it is in the interest of justice for this proceeding to be transferred as to them to the latter jurisdiction, for the following reasons: None of these four defendants resides in the Maryland District, but in or near Chicago, and it would be a great and unnecessary hardship upon them to stand trial in the Maryland District, where they do not reside, where they have no business, where they are unknown, and to which a great number of witnesses would have to be brought at great inconvenience and personal expense to the defendants; also, that the books and records of the corporate defendant, Erie Basin Metal Products Company, Inc., production of which would be essential to the trial of this case, both as respects the Government's testimony as well as that of the defendants, are all located in or near Chicago, as well as the books and records of the other companies whose operations are alleged to have been directly connected with the offenses charged in the indictment as having been committed by the various defendants.

Rule 21(b) of the Rules of Federal Procedure provides as follows: "Offense Committed in Two or More Districts or Divisions. The Court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged." It will thus be seen from the express language of this rule that there are three prerequisites to the court ordering a transfer of a proceeding of this kind to another district or division: first, the defendant must move for the transfer; second, it must appear from the indictment or from a bill of particulars that the alleged offense was committed also in that district or division to which the defendant moves for transfer of the proceeding, and, third, the court must be satisfied that in the interest of justice such transfer should be made.

It is not contended by these four defendants who are now moving for the transfer of the proceeding that it may be transferred not only with respect to them, but also with respect to the two other defendants in the case, who not only have not made similar motions but who by their counsel strongly oppose the transfer as to them. On this point, we conclude that the four moving defendants are correct in their position. That is to say, as we construe the rule, although there happens to be an absence of any direct authority with respect to it on this precise point because of the rule's newness, a transfer could not be made with respect to any defendant who does not ask for it. Note the phraseology of the rule: "The court upon motion of the defendant shall transfer the proceeding as to him". Also, these four moving defendants do not contend, and we conclude that they may not successfully contend, that there may be a transfer of less than the entire proceeding as respects them. That is to say, we conclude there may not be a transfer of one or more, and not of all counts in the indictment as respects them. However, we are satisfied that there is nothing in the rule which forbids a severance of parties defendant as respects the transfer, on the same principle that there may be a severance of parties for the purpose of trial within a given district as respects any count in an indictment, and this includes conspiracy counts. See Miller v. United States, 4 Cir., 277 F. 721; Olmstead v. United States, 9 Cir., 19 F.2d 842, 53 A.L.R. 1472.

We come, then, first to the question: where was the offense committed? In the present indictment, the first count is the conspiracy count, and the remaining two counts are substantive ones. All counts are based upon alleged violation of the Renegotiation Act of April 28, 1942, as amended, 50 U.S.C.A. Appendix, § 1191. The gist of the offense alleged in the first, or conspiracy count, is that beginning on or about December 1, 1943, and ending on or about December 31, 1946, all of the defendants, at Baltimore and at various other places, conspired to defraud the United States out of certain funds to which it would have been

entitled under the provisions of the Renegotiation Act of 1942, as amended, by means of falsehoods and misrepresentations which would induce the United States to agree to accept a return of lesser sums, under the renegotiation of certain war contracts entered into between the Government and the defendant, Erie Basin Metal Products Company, Inc. and another affiliated company, the Interstate Machinery Company, not embraced in the indictment, than the United States would be entitled to or would agree to accept pursuant to renegotiation procedure, were it not deceived by defendants' fraudulent conduct, which the defendants knew and intended should have the effect of apparently reducing the amount of net profit earned by the Erie Basin Metal Products Company, Inc. in the years 1944 and 1945, and by the Interstate Machinery Company in the year 1944, and deceiving the War Contracts Price Adjustment Board and its representatives as to the true costs, profits and financial positions of these companies for these years; with the result that this Board would agree to accept a return of a less amount of net profits than would be the case if the true facts were disclosed. In this, the first count of the indictment, ten overt acts are enumerated as having been committed by the defendants for the purpose of effecting the objects of the alleged conspiracy, some of which appear, as the result of the defendants' affidavits and the bills of particulars which the Government has been required to supply the defendants, to have been committed in Chicago, as well as in Baltimore. So the Court has no difficulty on the ground of venue with respect to the matter of the transfer insofar as the first, the conspiracy count, is concerned.

The second and third counts are similar to each other, except as to the years in which the false financial statements, information and data are alleged to have been supplied the Government by the defendants, the second count relating to such statements, etc., given for the fiscal year ending November 30, 1944, and the third count relating to corresponding information covering the fiscal year ending November 30, 1945. The gist of the offense alleged in both counts 2 and 3 is the same as that alleged in the first, or conspiracy count, which the defendants conspired to do, namely, that by reason of the inclusion of false and fraudulent statements as to operating expenses and income, defendants attempted to mislead and deceive the Government as to their true financial situation with respect to the operations of the Erie Basin Metal Products Company, Inc. under its war contract, and to prevent the Government from recovering large amounts of excess profits earned by that company under these contracts. These counts are based on subsection (c) 5(A) of the Act, which provides: "Any person who willfully fails or refuses to furnish any statement, information, records, or data required of them under this subsection, or who knowingly furnishes any such statement, information, records, or data containing information which is false or misleading in any material respect, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or imprisonment for not more than two years, or both." It will thus be seen that the gist of the offense is knowingly *furnishing* any statement, information, records or data required under the Act which contains information that is false or misleading in any material respect.

The Government would have us construe the offense, as stated in the indictment, as restricted to furnishing a specific, and what the Government calls a final compilation or report to the Board at Baltimore. The Government relies on the following language in the indictment—we quote from paragraph 10 of count 2, that count and count 3 being the same on this point except as to years: "That on or about the 12th day of November, 1945" (then all of the six defendants are named) "the defendants herein at Baltimore, Maryland, and within the jurisdiction of this court, did knowingly and willfully file with and cause to be filed with and furnished to and caused to be furnished to the War Contracts Price Adjustment Board through the Price Adjustment Section, Chemical Warfare Service, Baltimore, Maryland, in response to the aforesaid requirement and pursuant to the Renegotiation Act of 1942, financial statements and data of Erie Basin Metal Products Company, Inc., covering the fiscal year end-

ing November 30, 1944, which said financial statements and data, as the defendants and each of them well knew contained false and misleading information in the following material respects * * *." Then follow specific statements regarding those respects.

As opposed to this contention, the defendants assert that since much of the information required by the Board, if not, indeed, all of it, was given to its duly authorized representative in Chicago in the course of numerous lengthy conferences, the offense, if it was an offense, was, therefore, in part, at least, committed in Chicago, because that is where the alleged false information was furnished in the first instance to duly authorized representatives of the Board, who took it to Baltimore. The Government admits that this occurred as to the matters recited in count 3, but says that it is without knowledge in connection with the matters relied on in the second count, or as to just how the so-called report on which it relies in the second count was sent to Baltimore. However, the various affidavits supplied by defendants and the information given in the Government's bills of particulars satisfy this Court completely that there was a very definite furnishing in Chicago of figures and data which form the basis of both counts 2 and 3, and that, therefore, if the furnishing can properly be construed as part of a continuing offense, then the crime charged in these counts at least commenced in Illinois.

At this point it is appropriate for the Court to allude to certain language contained in the letter of transmittal by the Erie Basin Metal Products Company, Inc., which has been introduced in evidence, to which are annexed the figures which the Government claims make up the report. These figures the Government intends to rely upon as the *information furnished,* and since, as the Government claims, they were not furnished until they reached Baltimore and were there delivered to the Board officially, the *furnishing* took place in Baltimore. The letter is addressed to Army Service Forces, Office of Chief, Chemical Warfare Service, Baltimore, and dated August 6, 1946. It is virtually identical with the letter of transmittal of the so-called other report which the Gov-

ernment claims is directly embraced in the other count. We quote from the first letter as follows: "You will note that the figures used in preparing this claim *are tentative and may be subject to later adjustment",* and then, at the close of the letter: "We have given you the information requested to the best of our ability, *and will gladly supply such additional information as you require as soon as possible after we receive your request".* (Emphasis added.) This language would seem to lend at least some further support to the defendants' contention that this letter is not to be taken in the aspect that the Government would have us take it, which is that it represents the ultimate completion of this matter of furnishing information, and that, therefore, even if false information was previously given in Chicago or elsewhere to representatives of the Board, such is immaterial unless and until it was all embodied in the financial data annexed to this letter.

There is much authority to support the defendants' position, and after full consideration of the cases, the Court is satisfied that it should accept their position as sound. Suffice it to speak of two cases, both decisions of the Circuit Court of Appeals of this Circuit,—Decker v. United States, 140 F.2d 375, and Newton v. United States, 162 F.2d 795. In the first of these cases the appellate court decided that where the general manager of a war contractor, requested to furnish statement of actual costs of production under Navy contracts, told Navy representatives that an accurate statement was impossible because contractor's books did not segregate costs on Navy contracts, which constituted most of the contractor's business, and referred representatives to the books which disclosed improper charges representing money fraudulently appropriated by the manager and his accomplice, such constituted furnishing a false statement by the manager, within the statute, the word "furnish" as used in the statute not being a term of art, but rather one of very broad and general denotation.

It is to be noted that one of the other sections of the same Act with which we are here concerned was being construed in that case. In the course of its opinion, the Cir-

cuit Court of Appeals said, 140 F.2d 375, at 377: "In the Government's brief, are given the definitions of 'furnish', taken from several dictionaries. Without analyzing these definitions, we can at least say that the word is not a term of art but is rather one of very broad and general denotation. It, in other connections, has always been so interpreted." Then the court gives numerous authorities, and continues: "The statute specifies no special manner or form of statement, no particular method or means, written or oral, by which the statement is to be made or furnished. Zipf, in accordance with the letter that he presented, requested Decker for the required statement. Decker, in referring Zipf to Triumph's books, impliedly, at least, declared that these books (with all their imperfections on their leaves) constituted the best available information as to the desired production costs. We think, within the purview of the statute, Decker clearly furnished a statement. We believe, further, so far as this case is concerned, that Decker's action here renders him criminally liable to the same extent as if, in response to Zipf's official request, Decker had manually delivered to Zipf the books of Triumph with the remark: 'These books contain the statement that you wish.' "

In the Newton case, it was held that an indictment alleging that defendant, in the Western District of Virginia, aided in preparation of a false claim under Internal Revenue laws, charged an offense which took place in the Western District and that there the case could be tried, notwithstanding that claims were filed with the Internal Revenue Collector in the Eastern District, or, in any event, charged an offense which was begun in the Western District, within the statute providing that offenses begun in one district and completed in another may be tried in either district. The new Criminal Code, Section 3237, 18 U.S.C.A. § 3237, as did also the old Judicial Code, Section 103, provides that an offense begun in one district and completed in another may be tried in either district. The section as now revised contains the added phrase directly applicable here: "or committed in more than one district."

To summarize our views on this first point, we conclude that the Government takes too narrow, too rigid a view of this venue question, and we also believe that the position of the defendants is amply supported by the authorities. The very recent case of United States v. Hughes Tool Co., decided by the District Court for the District of Hawaii, 78 F.Supp. 409, upon which the Government places much reliance, is clearly different on the facts.

 We come, then, to the second and final question, namely, are we satisfied that it is "in the interest of justice" to transfer the proceeding? There can be no serious controversy over what the words "in the interest of justice" mean. They must mean the taking into full account of the rights of the accused, the Government, and the public, that is to say, the promotion of a speedy and at the same time a fair trial, with appropriate consideration for the curtailment of unnecessary expense or prolongation of litigation, and in this connection the relative cost to the parties, their possible embarrassment by reason of absence from their homes and places of business for extended periods of time, the relative cost and hardship through removal of books and records into another jurisdiction, as against non-removal. All of these factors must be weighed. After this is done, it seems perfectly clear to this Court that, since all of the records needed for the trial, and most, if not all of the witnesses are in Chicago, except some of the Government's witnesses who are scattered over the country and it has not been shown that they will be caused any greater inconvenience by being required to come to Chicago than to Baltimore, if the law otherwise permits the case to be tried in Chicago, it should be transferred there. These four defendants have asked for it, and it would seem that a real injustice would be done them if their request were not granted.

As opposed to those considerations, of course the Court has not blinked the circumstance stressed by counsel for the Government which may be created by this removal, namely, that it may involve duplication in one trial of all the testimony taken in the other one. It may seem that this fact alone makes a transfer definitely against the public interest and the proper

886

administration of justice and outweighs the factors favoring removal. However, this Court does not think so, because if under this new Rule No. 21 these defendants are otherwise entitled to transfer, and if there are such considerations as have been noted relating to facility and economy of trial as respects the individual defendants and without any undue hardship on the Government, this Court feels that it should not hesitate to order the transfer, even though there may be duplication, in the two separate jurisdictions, of the testimony, in the event that there is a trial on all counts of the indictment in each place with respect to the two different groups of defendants.

■ Finally, in this connection the Court feels it is appropriate to make allusion to the point which counsel for these four defendants have brought up, namely, that if this Court be sound in its conclusion just reached, then, in the interest of justice, in the public interest, in the interest of time and money-saving, and in greater fairness to all concerned, it would seem that the Department of Justice should have given more complete consideration to the question whether, in the first instance, this indictment should not have been brought in the Illinois jurisdiction. And, also, it seems appropriate for the Court to point out that it is perfectly proper, even now, to combine the trial of all defendants in that other jurisdiction by indictment there of the Messrs. Garsson. But, whatever the Government may see fit to do in this respect, the decision which this Court has reached is not based upon hope or expectation that through limited transfer of the proceeding it may be relieved of what would appear to be a very tedious trial of long duration. If *any* of the defendants must be tried here, then it is the duty of this Court to proceed with reasonable promptness with the trial, and promote the efficient administration of justice in fairness to all concerned. But in conclusion the Court wants' to say that even though the trial is now narrowed in this jurisdiction to two defendants, and even though the Court is impressed with the necessity, in the interest of these defendants and in the public interest, of assigning a date in the reasonably near future for the trial, the Court will not do so unless there is a more definite disclosure to the Court through pre-trial conferences as to why the Government believes, if it still does, that this case will require several months for trial. Such seems to be a totally unwarranted belief, if the case is properly prepared for trial.

One final point in this connection: in addition to the Court making it a condition precedent to fixing a date for trial that the Court shall be satisfied that the Government is not going to pad the trial with unnecessary testimony, and drag the case out to an inordinate length, the Court again raises for very serious consideration by counsel the question whether there is any real necessity, in view of the disclosures which have been made in the course of the various preliminary hearings, and the vast amount of detailed accounting data necessarily involved in the case, of trying any of the defendants on other than the substantive counts. It would appear to the Court, at this stage at least, that a great deal of time and money would be wasted by launching into the conspiracy charge, when the two substantive counts would appear to be sufficient to enable the Government to bring out everything required in the public interest that relates to the alleged guilt of these various defendants.

I will sign an order in accordance with this opinion.