**UNITED STATES of America,**

v.

**J. Charles JESSUP, Rose Oden Jessup and Murphy M. Maddux.**

Crim. No. 13682.

United States District Court
M. D. Tennessee,
Nashville Division.
July 21, 1965.

James F. Neal, U. S. Atty., and Carrol D. Kilgore, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

Francis R. Salazar, Denver, Colo., for defendants.

WILLIAM E. MILLER, Chief Judge.

In the instant case defendants, J. Charles Jessup and Murphy Maddux, have moved by their attorneys for a change of venue from this district to the United States District Court for the Southern District of Mississippi, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Rule 21(b) provides as follows:

"(b) Offense Committed in Two or More Districts or Divisions. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

The offense with which these defendants are charged is the use of the mails for a fraudulent purpose or to carry out an artifice or deceit, in violation of 18 U.S.C.A. §§ 1341 and 1342. 18 U.S.C.A. § 3237 provides, insofar as is pertinent to the instant case, as follows:

"Any offense involving the use of the mails * * * is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such * * * mail matter moves."

Taking this statute in conjunction with 18 U.S.C.A. § 1341, it is apparent that mail fraud is among those offenses which are explicitly declared to be continuing offenses. Furthermore, since the Southern District of Mississippi is the district in which the allegedly fraudulent material was deposited for mailing and, in the language of the statute, "from which it moved," this action could have been prosecuted in the Southern District of Mississippi, and it can be transferred there pursuant to Rule 21(b).

By virtue of the language employed by Congress in drafting Rule 21(b), the determination as to when a case should be transferred under this rule has been left primarily to the sound discretion of the court. The only specific legislative requirement, other than the necessity of a motion by the defendant and the requirement that the offense shall have been committed in two or more districts or divisions, is that the court should be satisfied that the transfer is "in the interest of justice." A number of judicial decisions throw light upon the relevant criteria for determining the propriety of a transfer to another district.

United States v. National City Lines, Inc., D.C., 7 F.R.D. 393, was one of the first instances wherein the court faced squarely the problem of the scope of the "interest of justice" provision of Rule 21(b). In that case the defendants were indicted for violation of the Sherman Anti-Trust Law. They made a motion to have the action transferred from the Southern District of California to the Northern District of Illinois. In granting the motion, the court enumerated in thorough fashion the factors relevant to making a determination as to whether a transfer is in the interest of justice.

"The abuses which led to the adoption of the rule give us criteria by which to determine whether the discretion should or should not be exercised in a particular case. * * * Courts have held that the indictment of a person away from his domicile which requires him to (1) go to a distant place, (2) to employ counsel in a distant city and (3) to bring his witnesses from afar are hardships to be considered. So is also, in the

case of a corporate body, the fact that (4) its business headquarters are in another city, and (5) its records are there." 7 F.R.D. at 398.

United States v. Olen, D.C., 183 F. Supp. 212, involved a prosecution for violation of the Securities Act of 1933. In considering the defendants' motion to transfer the action from the Southern District of New York to the Southern District of Alabama, after determining that venue could have been laid in the latter district, the court based its decision to grant the motion on three basic factors. First, the bulk of the allegedly criminal acts did not take place in the Southern District of New York. Second, attendance at trial in New York of the defendants who resided in Alabama would "seriously hamper their earning powers" and involve them in the additional expense necessary to come to New York, remain there, and hire local counsel. Third, nearly all of the witnesses to be called by the parties resided in Alabama, including especially the defendants' character witnesses.

> "Even though prospective witnesses would have no standing to move for a transfer, their convenience may certainly be considered * * * in the exercise of [the court's] discretion." 183 F.Supp. at 219.

In Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674, the Supreme Court reversed a Court of Appeals decision which had in turn reversed a district judge's determination not to transfer a case under Rule 21(b). It was held that the Court of Appeals erred in making the discretionary determination for itself rather than setting forth the proper criteria and remanding the case to the district judge to decide, based on those factors, whether the transfer was in the interest of justice. In reversing the Court of Appeals the Supreme Court corrected the lower court's statement that a criminal defendant had a "right" to be tried in his home jurisdiction, while making it clear that the defendants' home district was a valid factor for consideration.

> "The fact that Minnesota is the main office or 'home' of the respondent has no independent significance in determining whether transfer to that district would be 'in the interest of justice,' *although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel.*" 376 U.S. at 245–246, 84 S.Ct. at 772. (emphasis added.)

In United States v. Cohen, D.C., 35 F.R.D. 227, the court denied the transfer motion of a defendant charged with interstate transmission of wagering information. The indictment was brought in the Northern District of California, and the defendant for reasons of convenience requested a transfer to the District of Nevada, wherein he and his witnesses resided. The court denied the motion to transfer on the grounds that the relative hardships to be suffered by each party by a trial in the other district were almost equal, and that the respective conveniences were much too evenly balanced. The defendant's witnesses did reside in Nevada, but they were few in number and the government's witnesses lived in California. Defendant's business was not large, and its records were no more extensive than the records needed by the government to prosecute. The court denied the motion based on its belief that

> "In weighing and balancing the respective conveniences of the parties the Court should not grant the motion unless the factors involved indicate a balance of inconvenience of some substance to the defendant." 35 F.R.D. at 232.

The Court in United States v. West Coast News Co., 30 F.R.D. 13, also denied the defendant's motion to transfer. The court admitted the validity of such considerations as the convenience of witnesses and the expenses involved in liti-

gating in a given district. Weighing those considerations, the court arrived at the conclusion that it was not possible to choose a jurisdiction which would be convenient for both parties.

 A consideration of the foregoing decisions and the principles enunciated therein leads the court to the conclusion that such practical factors as the place of residence of the defendant, the expense and trouble to be caused by a trial in a far removed district, the expense involved in the transportation of witnesses, the volume of records and the difficulty of moving them, the economic loss to be suffered by an extended period away from one's place of work, the advantage of being able to provide the jury with views of immovable exhibits, if permitted by the court, all are valid factors to be considered in determining whether a case should be transferred under Rule 21(b). And it is equally clear that the weighing of the relevant considerations and the reaching of a final decision are matters within the sound discretion of the trial judge. In Kott v. United States, 163 F.2d 984, certiorari denied 333 U.S. 837, 68 S.Ct. 609, 92 L.Ed. 1122, the court said:

"[B]efore a court makes an order for the transfer of a proceeding to another district [pursuant to Rule 21(b)] it must be satisfied that it is 'in the interest of justice' that the proceeding be transferred. We are of the opinion that the rule leaves the question of a transfer of that sort to the discretion of the District Judge, and that merely an erroneous exercise of that discretion will not require a reversal. An abuse of discretion is necessary." 163 F.2d at 987.

Defendants, J. Charles Jessup and Murphy M. Maddux, have in their motion and brief proffered numerous factors which they contend militate in favor of their motion to transfer. In sum these factors are as follows:

(1) The defendants are residents of the Southern District of Mississippi, and would have to incur considerable expense in traveling to Nashville and remaining here for trial.

(2) Defendants' witnesses, including character witnesses, reside, or at least the majority of them reside, in said district and would have to be transported to Nashville at considerable expense and inconvenience to the defendants and the witnesses themselves.

(3) Fellowship Revival Association, the instrument through which defendants are alleged to have practiced their deceit, is located in the Southern District of Mississippi, as are its records and books. These materials would have to be transported to Nashville to be available for trial, certainly at some expense and inconvenience to the defendants.

(4) The manner in which the defendants live has been injected as an issue into the proceedings by the government, and the defendants' personal records are all located in the Southern District of Mississippi, as are certain immovable exhibits, such at the defendant Jessup's home and boat, which could not be viewed as exhibits by a jury sitting in Tennessee.

(5) The presence of defendants is necessary to the operation of said Fellowship Revival Association, and their absence therefrom for a period necessary to try this cause (estimated at six weeks) would cause serious financial hardship and would cause defendants to suffer great losses, whereas during a trial in the Southern District of Mississippi the defendants could keep up the operation of their business during the evenings and on week ends.

(6) The physical plant and equipment of said business are located in the Southern District of Mississippi and would not be available for a direct view by the jury, said view being the best evidence as to the nature of the same.

Defendants further contend that the government has had the activities of the

Fellowship Revival Association and those of the individual defendants under surveillance and investigation for a period in excess of three years, and that the government was thereby aware of all of the above-mentioned circumstances militating in favor of a trial in the Southern District of Mississippi. Defendants allege that the so-called fraudulent pieces of mail were sent from Gulfport, Mississippi to almost every state of the union, and that the government has selected to prosecute the defendants in a jurisdiction in which a very small percentage of the crimes alleged can actually be said to have occurred, whereas all of the allegedly fraudulent material originated in the Southern District of Mississippi wherein it was deposited for mailing.

As might well be expected, the Government has not permitted these contentions and allegations to go unanswered. In its memorandum brief in opposition to transfer it has systematically attacked the material allegations of fact which defendants have proffered as weighing in favor of a transfer. The Government cites the Minnesota Mining & Manufacturing Co. case, supra, in support of its contention that the distance that defendants would have to travel in order to be present at trial is in itself not a valid consideration, although it is conceded that distance is relevant insofar as it bears on other factors, such as expense and inconvenience, disruption of business activities, and so on.

The Government attacks defendants' contention that it will be necessary to transport many witnesses to this district for trial, saying that this contention is too vague and general to be relevant. However, in his affidavit attached to Defendants' Reply to Response to Pending Motions defendant J. Charles Jessup indicates that he will have to call between 65 and 80 witnesses from the Biloxi-Gulfport area, and that less than 5% of the total of defendants' witnesses will be from outside of the state of Mississippi. The Government makes

much of the fact that on the prior hearing in this matter defendants brought in witnesses from as far away as Indiana and yet did not bring any from Mississippi. Defendants have responded by pointing out that it was much easier to bring witnesses from Glasgow, Kentucky and Jeffersonville, Indiana, a suburb of Louisville, less than 200 miles away, than from Gulfport, which is over 560 miles away. Undoubtedly it was also considerably less expensive.

The Government has, by virtue of the charges leveled at the defendants, made an issue both as to their character and their way of life. It would not be in the interest of justice under such circumstances to place a burden on the defendants' ability to introduce evidence and witnesses to rebut such contentions. They are, in the last analysis, presumed to be innocent of the charges. They should not be forced to anticipate—certainly at this early stage—the course of the litigation which will undoubtedly be protracted, and to identify specifically the individuals they intend to call as witnesses. The statement by defendant Jessup in this regard is sufficient to establish that numerous residents of the Gulfport-Biloxi area will be called to testify, and that these persons will make up the great bulk of the witnesses for the defense.

The Government further attacks defendants' assertions that they are men of moderate financial means, and that for this reason the expense involved in coming to Nashville for trial would be a burden on them. In their affidavits the defendants contend that they are of moderate financial means. For the purpose of deciding on this motion, it seems to be elementary that their financial means would not be a controlling factor. Surely the Government does not contend that Rule 21(b) was only intended to benefit the poor. It seems to the Court that the clear import of the term "interest of justice" as it applies to financial expenditures by movant defendants is that

it would be in the interest of justice to transfer an action if the expense to be incurred by the defendants if the action were not transferred is considerably greater or more burdensome than the expense which would be necessary if the action were transferred. And this is true whether the defendant be rich or poor. It should not be necessary that a defendant show poverty, or refrain from hiring the best counsel he can obtain, or refrain from conducting such investigations as he can afford, in order to be able to take advantage of this rule. And, taking this as the test, it is clear that by establishing the need for transporting from defendants' home district between 65 and 80 persons some 560 miles the defendants have established a considerable financial burden incident to a trial in this district.

The Government also attacks the defendants' contentions that it would be necessary to transport voluminous records to Nashville for trial here. The Government insists that all of the records which are relevant to the issues are already present here. Of course, the defendants should not be forced to limit their presentation of records at trial to what the Government considers relevant enough to impound. It also would seem unfair to require of the defendants a detailed listing of documents to be produced in view of the complexities of the case and the probable time lapse between the date of the present motion and the actual trial. Irrespective of what records or items of physical evidence defendants might eventually introduce, it is in the interest of justice for them to be tried at a place from which easy access can be had to all of their records and other evidentiary material.

The Government attacks defendants' contentions regarding the economic loss to be suffered by their absence from their supervisory posts at the Fellowship Revival Association. According to the Government, Fellowship Revival Association's convenience is not a relevant factor because it is not a defendant, and in addition defendants are not necessary to the day to day operation of the business as is evidenced by their prolonged voluntary absences at various times. Further, it is said that the business cannot continue to operate anyway because all of its records are in Nashville, having been impounded as previously pointed out.

It is true that the convenience of the Fellowship Revival Association is not a relevant consideration. However, in considering the convenience of the individual defendants, it is clear that the maintenance of their business is a valid consideration. It makes no difference when or how often the defendants might have voluntarily slowed or suspended business operations. The business being theirs to run, it was in their sound discretion to decide how to run it. That is a far cry from a forced suspension of operations during the trial of defendants on the charges in the indictment. Undoubtedly the publicity incurred by defendants as a result of this trial will seriously hamper the activities of their business. To say that this period in its existence is a normal period of operation is to ignore the realities of the situation. A showing by defendants of exactly what they intend to do by way of reviving the sagging fortunes of the association is not required. It is enough to say that it would not be in the interest of justice to put them in a position which would further burden their chances of sustaining and continuing operations should they be found innocent of the charges.

The Government attacks defendants' allegations regarding the lack of substantial connections with the State of Tennessee and the crime with which defendants are charged. The Government points out that one of the defendant's divorces took place in Tennessee, and that the Fellowship's Tennessee mailing list numbers over 5,000. Be this as it may, it is still clear that substantially greater connections with the State of

Mississippi are present. It is true that the crimes charged are continuing offenses and defendants could have been indicted in numerous districts. But it is worthy of note that while many of the alleged fraudulent mailings were through or into separate states such as Tennessee, all of them originated in Mississippi. In the Olen case, supra, it was pointed out that the fact that the bulk of crimes charged did not occur in the district from which transfer was sought is a valid consideration. In this case the bulk of the alleged crimes did not occur in Tennessee. They did, however, as stated all occur in Mississippi.

■ The Court is persuaded that a trial in this district would indeed be a substantial hardship on defendants. On the other hand, the Government has failed to offer evidence that a transfer to the Southern District of Mississippi would subject it to a similar hardship. As in the Olen case, supra, apparently the only factor on the Government's side disfavoring a transfer is the fact that the indictments were obtained in this district and the United States Attorney here is familiar with this complex case, and has doubtless engaged in some preliminary preparation. But also like the Olen case, this is of little moment since all of the factors militating in favor of a transfer were, or should have been, known to the Government when it chose to prosecute in this district rather than in Mississippi or in one of the many other districts wherein it alleges these charges could have been brought. A thorough consideration of all of the suggested factors and arguments on both sides leads to the unmistakable conclusion that there exists in this case, to borrow a phrase from United States v. Cohen, supra, "a balance of inconvenience of some substance to the defendant." 35 F.R.D. at 232.

This brings us to a further problem— the matter of Rose Oden Jessup, one of the named defendants. One of the clear requirements of Rule 21(b) before an action may be transferred in the interest of justice is that the defendant move for such a transfer. Defendant Rose Oden Jessup has not made such a motion, and there appears to be considerable room for doubt as to whether she has consented to such a move. Attorney Francis R. Salazar, representing defendants, J. Charles Jessup and Murphy M. Maddux, appears to have reasonably believed that Mrs. Jessup had, through her attorney O. H. Cargill, consented to a transfer. However, in its Response to Pending Motions the government indicates that Mr. Cargill has declined consent. The government has attached to its response a copy of the consent which was mailed by Mr. Salazar to Mr. Cargill for his signature, but which was returned unsigned. Also attached thereto is a letter from Mr. Cargill which was returned with the unsigned consent, indicating that he had no plans to file additional motions.

Mr. Salazar insists that Mr. Cargill had orally indicated to him that he intended to consent to the transfer. The Court does not dispute this contention. However, in his affidavit Mr. Salazar admits that it appears that Mr. Cargill has at least "inferentially" indicated that he will not honor his oral agreement and that he does not intend to consent. This can be inferred, according to Mr. Salazar, from the unsigned consent and accompanying letter. The upshot of all this is that at present it must be assumed that defendant Rose Oden Jessup does not, and will not, consent to a transfer to the Southern District of Mississippi. Thus the problem comes down to determining whether this lack of consent prevents the Court from transferring the action as to defendants J. Charles Jessup and Murphy M. Maddux.

Anticipating the possibility that defendant Rose Oden Jessup might not consent to a transfer, the other defendants have moved for a severance pursuant to

the provisions of Rule 14, F.R.Cr.P., which provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

Apparently the argument offered by the defendants desiring transfer is that they are prejudiced by the joinder because if the unconsenting defendant had not been joined then they would be able to transfer the action and incur considerable savings, therefore justice requires relief in the nature of a severance.

■ Defendants J. Charles Jessup and Murphy M. Maddux rely for their position chiefly on the case of United States v. Erie Basin Metal Products Co., D.C., 79 F.Supp. 880. In that case four of six defendants requested a transfer as to all counts of the indictment. The court granted the transfer, stating in part

" * * * we are satisfied that there is nothing in the rule [21(b) ] which forbids a severance of parties defendant as respects the transfer, on the same principle that there may be a severance of parties for the purpose of trial within a given district as respects any count in an indictment, and this includes conspiracy counts." 79 F.Supp. at 882.

In United States v. Choate, 276 F.2d 724, 86 A.L.R.2d 1337, the Fifth Circuit Court of Appeals held that under Rule 21(b) the several counts of an indictment could be severed and a transfer could be granted as to some counts while refused as to the remainder. However, while generally discussing the scope and application of Rule 21(b), the court in that case

made some statements by way of dicta which are relevant to the matter at hand.

"Rule 21(b) must be construed in pari materia with the other Rules of Criminal Procedure. * * * The words 'as to him' in Rule 21(b) necessarily contemplate the permitting of a separate trial as to separate defendants as provided by Rule 14. * * * While this is implicit rather than expressed, we conclude that Rule 21(b) is carefully drafted so as to permit the court to act upon the motion of any one defendant or any number of defendants and, in connection with Rule 14, to sever and transfer the proceeding under each count separately which charges the commission of the offense in the transferee district." 276 F.2d at 727 [citations omitted.]

The Choate case was published by American Law Reports, Second Series, along with an extensive annotation covering all aspects of Rule 21(b), in which this statement was made:

"With respect to severance of defendants, it has been recognized that Rule 21(b) permits the court to act upon the motion of any one defendant or any number of defendants and to order a severance of parties defendant." 86 A.L.R.2d 1353.

In this extensive treatment of the subject, it is worthy of note that no authority was cited to support a position opposed to the above-stated general rule. The government relies on United States v. Foster, D.C., 197 F.Supp. 387, in support of its position that a transfer would be improper unless all defendants join in the motion. However, the Foster decision is not controlling, inasmuch as it deals with the denial of a motion to transfer because several of the counts of the indictment were not transferrable. That problem does not face the Court in the instant action, since all eleven counts of the indictment charge continuing offenses within the meaning of 18

U.S.C.A. § 3237, and all are transferable. In Foster there was only one defendant charged with the offenses in question, and the problems facing the court did not include severability as regards several defendants.

The court in Foster did make the following statement, which is relied on by the government in this case.

> "Moveover, the inconvenience and duplication of effort in conducting two trials in widely separate jurisdictions would override any possible convenience to some of the witnesses and any possible saving to the defendant from not having to bring some of the witnesses to Maryland." 197 F.Supp. at 391.

However, it should be borne in mind that this statement was made with reference to the inconvenience and duplication of effort involved in trying *one* defendant in two different jurisdictions on separate counts. When faced with the problem of duplication in a case where less than all defendants have moved for a transfer pursuant to Rule 21(b), the considerations are somewhat different and an opposite decision might fairly be reached, as was the case in the Erie Basin case, supra:

> "As opposed to those considerations, of course the Court has not blinked the circumstance stressed by counsel for the Government which may be created by this removal, namely, that it may involve duplication in one trial of all the testimony taken in the other one. It may seem that this fact alone makes a transfer definitely against the public interest and the proper administration of justice and outweighs the factors favoring removal. However, this Court does not think so, because if under this new Rule No. 21 these defendants are otherwise entitled to transfer, and if there are

such considerations as have been noted relating to facility and economy of trial as respects the individual defendants and without any undue hardship on the Government, this Court feels that it should not hesitate to order the transfer, even though there may be duplication, in the two separate jurisdictions, of the testimony, in the event that there is a trial on all counts of the indictment in each place with respect to the two different groups of defendants." 79 F.Supp. at 885–886.

█ In consideration of all of the foregoing, it is the opinion of the Court that the motion of defendants J. Charles Jessup and Murphy M. Maddux for transfer of this action as to them to the Southern District of Mississippi pursuant to Rule 21(b), F.R.Cr.P., and the motion of the same defendants for severance pursuant to Rule 14, F.R.Cr.P., should be granted. In view of this decision it is unnecessary for the Court to consider other pending motions heretofore filed by defendants J. Charles Jessup and Murphy M. Maddux.

Defendant Rose Oden Jessup, as to whom the action has not been transferred, has filed with the Court a motion for a separate trial, a motion for a bill of particulars, and a motion to dismiss the indictment as to her. The motion for a separate trial has been rendered moot by this decision. With regard to the motion to dismiss and the motion for a bill of particulars, in accordance with the order of the Court handed down January 13, 1965, consideration of these motions is postponed until after argument thereon has been heard on the date on which the case as to her shall be set for trial.

An order will be submitted to the Court to implement this memorandum.