**UNITED STATES of America**

v.

**John DIOGUARDI, also known as "Johnny Dio," Charles Tuso, Theodore Rij, also known as "Teddy Ray," also known as "Skinny," and Charles Salvatore Carlino, also known as "Charley Woppie."**

United States District Court
S. D. New York.

Dec. 10, 1956.

See also D.C., 20 F.R.D. 33.

Paul W. Williams, U. S. Atty., Robert Kirtland and Arthur Christy, Asst. U. S. Attys., New York City, for the Government.

Irving Mendelson and Charlotte C. D'Antonio, New York City, for defendant Charles Salvatore Carlino.

Goldstein & Goldstein, New York City, for defendant Charles Tuso, Gilbert Goldstein and Lawrence Kovalsky, New York City, of counsel.

William W. Kleinman, Brooklyn, N. Y., and Noah L. Braunstein, New York City, for defendant John Dioguardi.

Harold O. N. Frankel and Irving Spieler, New York City, for defendant Theodore Rij.

HERLANDS, District Judge.

This motion for a change of venue is based upon the defense claim that it is highly improbable that the defendants can obtain a fair and impartial trial at this time in this district because the mind of the public has been inflamed by the current publicity concerning the defendants. This motion must be viewed and decided in its factual setting and against the background of recently concluded court proceedings.

This indictment was filed September 26, 1956. On November 9, 1956 this case (referred to herein as the Dio case) was assigned for trial. At the same time, another case, which I shall refer to as the Miranti case (involving three other defendants, Miranti, Bando and Leo Telvi, charged in the same indictment with being confederates of the defendants Dioguardi, Tuso, Rij, and Charles Carlino) was also assigned for trial. The Dio case was set down for trial to commence immediately after the conclusion of the Miranti case.

The trial of the Miranti case began on November 9 and terminated on December 7 with the sentencing of Miranti, Bando and Leo Telvi. The trial schedule of the Dio case fixed December 10 for the hearing of motions and December 11, tomorrow, for the selection of a jury.

The trial of the Miranti case was reported in detail in all of the metropolitan newspapers in this district. The proceedings were also covered by Associated Press and United Press dispatches.

Nothing has been called to the Court's attention in any of the newspaper reports which was other than fair, accurate and objective. Freedom of the press and the public character of the Miranti trial were achieved without invading the defendants' right to an untrammelled trial by jury. The United States Attorney made every reasonable and proper effort to confine the trial testimony to the three defendants then on trial.

Nevertheless, the evidence unavoidably and, to a certain extent, necessarily made reference to Dio and others of the present defendants.

A statement of Miranti to the FBI (Trial Exhibit 10) and his grand jury testimony (Trial Exhibit 12), implicated Dio by name as having paid certain sums of money in connection with the attack on Victor Riesel. The newspaper publicity attendant upon the trial of the Miranti case contained references to Dio as the alleged mastermind of the acid-throwing attack and as the boss or higher-up in the conspiracy. News concerning the forthcoming trial of Dio and the others was interwoven with the published accounts of the Miranti trial.

Thus, Dio and his co-defendants have purportedly been identified as co-conspirators of the defendants who have just been convicted after a three-week trial.

It must be kept in mind also that the publicity of the past several weeks has been publicity concerning a trial, not concerning preliminary proceedings; publicity based upon sworn testimony, not upon surmise; publicity about a jury's verdict of conviction and not about an investigator's suspicion of guilt. That publicity must be superimposed upon the considerable publicity during the period immediately preceding the trial of the Miranti case.

■ Whether a change of venue is necessary need not be decided at this time. The Court will postpone such decision until the voir dire of the panel, at which time inquiry may indicate a condition of prejudice and prejudgment that warrants a change of venue. In the light of such condition as may then be disclosed, the defendants may renew their motion for a change of venue, if so advised.

At one of the conferences with defense counsel the thought was expressed as a possibility—which thought, however, has not been advanced by defense counsel today—that in the interest of justice there might be a postponement of the trial. The Court has considered this possibility under the "such other and further relief" clause of the motion papers, and, in the interest of justice, on its own motion.

To eliminate any question of a fair trial by a dispassionate jury, the trial should be adjourned several months. See United States v. Moran, 2 Cir., 1952, 194 F.2d 623, 625; Delaney v. United States, 1 Cir., 1952, 199 F.2d 107, 115, 39 A.L.R.2d 1300; United States v. Carper, D.C.D.C. 1953, 13 F.R.D. 483, 486.

■ It is true that, at no time, can a jury be drawn from an emotionless vacuum. Indeed, it is a virtue of the jury system that the jury reflects the conscience of the community no less than its common sense.

But the postponement of the trial will serve the practical purpose of enabling the community within the district, which constitutes the reservoir of jurors, to free its judgment from any possible emotional tension that may exist.

The ideal of even-handed justice by an open-minded jury is part of our collective faith and practice. It is an attribute of our laws, as it is of our national character, to give a defendant his day in court, whatever the accusation. The American capacity for righteous indignation is matched only by the American capacity for fair play.

The Sixth Amendment to the Constitution guarantees to the accused in all criminal prosecutions "a speedy and public trial, by an impartial jury." The Court is thus dealing with a constitutional right. Any substantial question should be resolved in favor of the constitutional right.

It would, therefore, be judicious to permit some time to go by before the Dio trial begins. The Court will order an adjournment out of an abundance of caution. This adjournment will not, so far as the Court can see, prejudice the Government, while it will guarantee the defendants' constitutional right to a fair trial.

Under the circumstances of this case, the ordinary advantages of a prompt trial must yield to the more urgent advantages of a fair trial.

Trial adjourned to April 24, 1957, at 10:30 a. m.