## UNITED STATES of America
### v.
## GENERAL MOTORS CORPORATION.

United States District Court
S. D. New York.
May 25, 1961.

George D. Reycraft, Washington, D. C., for United States of America; Sanford M. Litvack, Washington, D. C., Arthur H. Kahn, Antitrust Division, Dept. of Justice, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for General Motors Corp.; Bruce Bromley, New York City, Aloysius F. Power, Detroit, Mich., Allen F. Maulsey, John W. Barnum, New York City, of counsel.

SUGARMAN, District Judge.

General Motors Corporation has been indicted in this district charged with a violation of the Sherman Act, 15 U.S.C. A. § 2.

The indictment was filed on April 12, 1961. The defendant now moves for an order:

"(1) transferring this action to the United States District Court for the Northern District of Illinois, Eastern Division, at Chicago, Illinois, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, or, if the Court shall determine that it does not sufficiently appear from the face of the indictment that the offense charged was committed in that District and Division,

(2) directing the United States of America to furnish a bill of particulars of the indictment in respect of the district or districts and division or divisions in which the United

States of America claims that the offense charged was committed, without prejudice to the right of defendant to obtain additional particulars."

The second and alternative branch of the motion is withdrawn. The government on argument of the motion conceded that the alleged offence was committed in more than one district and that the proposed transferee district is one of the districts in which the commission of the offence is charged.

The government urges that the movant has failed to satisfy the requirement of showing that the interest of justice dictates the granting of the proposed transfer. In support of this conclusion, the government argues that

"The liberal venue provision of the Clayton Act permits the Government to proceed against a corporation such as General Motors in virtually any District and Division in the United States without regard to the substantiality of the contacts with the forum, the location of the company's main place of business, or the availability of witnesses and documents." [1]

It is at least doubtful whether the special venue provision relied upon does apply to criminal prosecutions. [2]

However, it is of no moment which venue statute applies because Rule 21(b), 18 U.S.C.A. applies in any event.

As the government's memorandum in opposition to the motion shows:

"The purpose of the Rule was not to require trial of a criminal case in the 'best' or 'most convenient' forum for the defendant, its purpose was to prevent the trial of a case in a jurisdiction selected by the Government without regard to the nature or the existence of any substantial relationship between the forum and the offense charged."

The offence charged in paragraphs 18 and 19 of the indictment is:

"18. For many years continuously up to and including the date of the return of this indictment, the defendant has monopolized the aforesaid trade and commerce in the manufacture and sale of railroad locomotives in the United States in violation of Section 2 of the Act of Congress of July 2, 1890, entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies,' as amended (c. 647, 26 Stat. 209, 15 U.S.C. Sec. 2) commonly known as the Sherman Act.

"19. General Motors has monopolized the above described trade and commerce by acquiring and maintaining power over price in the sale of railroad locomotives and the power to exclude its competitors from the railroad locomotive industry. General Motors has exercised its power over price and has excluded competitors from the railroad locomotive industry by its acts and conduct."

In amplification of the charge, the indictment alleges that for many years, through such activities as selling at a loss to stifle competition, price and production juggling, applying economic pressure on customers and suppliers, unlawful location of plants and facilities, unreasonable advertising expenditures and generally by becoming too "big" in the affected commerce, the defendant has run afoul of the antitrust laws.

To sustain the jurisdiction and venue laid in this district, the indictment specifies nine acts in furtherance of the alleged monopolization, these acts being meetings for formulation of policy in aid of the offence charged, or conduct implementing such policies.

In support of the transfer, the defendant General Motors Corporation has demonstrated that virtually all of its means

1. 15 U.S.C.A. § 22.

2. United States v. National Malleable & Steel Casings Co., D.C.Ohio 1924, 6 F.2d 40, 43.

of refuting the charge made by the government are unavailable to it unless the motion is granted. On the other hand, the inconvenience to the prosecution will be practically nil.

The manufacture and sale of locomotives by defendant is conducted by its Electro-Motive Division, with plant and offices at La Grange, Illinois, a suburb of Chicago. The defendant functions under a decentralized management plan. Its operations are carried out through separate divisions. Each division enjoys substantial autonomy under its General Manager.

A basic issue in the case will be whether the defendant violated the antitrust laws in achieving its dominant position. It claims that the excellence of its product and its services accounts for its success in the field of manufacture and sale of locomotives.

Defendant apparently relies on the classic dictum of Judge L. Hand in United States v. Aluminum Co. of America: [3]

"It does not follow because 'Alcoa' had such a monopoly, that it 'monopolized' the ingot market: it may not have achieved monopoly; monopoly may have been thrust upon it."

To show that its dominant position has been thrust upon it, defendant will undertake to expose to the triers of the facts the details of its operations ranging from cost accounting to engineering specifications.

The testimony of the principal executives and other officials of the Electro-Motive Division will be required. All of them reside and have their offices in the Chicago area. The division's normal business operations cannot be carried on if these key men were absent from the Chicago area during the trial; the defendant's case cannot be properly presented without the expert knowledge and advice of these men being made available to counsel throughout the trial.

Hundreds of file drawers of records, both current and historical, will be required by defendant's counsel. These documents are centralized in the Chicago area. It will be practically impossible to make them available in this district because of sheer bulk and because they are indispensable to Electro-Motive Division's day-to-day operations.

Chicago is the center of the nation's railroad industry. It is most convenient for the railroad officials whom defendant will call to refute the criminal charge leveled against it.

It is not unlikely that the jury will be given a physical view of the defendant's plant at La Grange, its training school there and representative models of the Electro-Motive Division's locomotives so that the jurors can evaluate the defence of product and service superiority.

Obviously, these demonstrative exhibits cannot be made accessible to a New York jury without going to expense and inconvenience which would be absurd considering the availability of an alternate, nearby proper forum.

■■ Weighing all the factors favoring transfer against the tenuous contact of the matter [4] with this district, the court entertains no doubt that the interest of justice mandates the requested transfer.

The government has submitted a list of 35 "potential" witnesses, 12 of whom reside in this district, 3 in Chicago, and 15 of the remaining witnesses reside closer to New York than to Chicago.

The persons listed may not even be called and no hint is given of how vital to the prosecution their evidence will be. Little if any weight can be accorded their convenience on this motion.[5]

3. 2d Cir., 1945, 148 F.2d 416, 429.

4. "Locus of coming to agreement is not the gist of the offenses proscribed." United States v. National City Lines, 334 U.S. 573, 593, 68 S.Ct. 1169, 1180, 92 L.Ed. 1584, note 40.

5. Goodman v. Southern Ry. Co., D.C.N.Y. 1951, 99 F.Supp. 852, 854.

Judge Cashin summarized the applicable law in United States v. Olen,[6] as follows:

"The Supreme Court has clearly taught, therefore, that any criminal statute should be construed, if possible, so as to lay the venue of a case at the home area of a defendant, at least so long as that home area has any connection with the wrong charged."

The first branch of the instant motion is granted; it is so ordered.

6. D.C.S.D.N.Y.1960, 183 F.Supp. 212, 217.