Clifford JONES, Petitioner,

v.

Honorable Oliver GASCH, Judge of the United States District Court for the District of Columbia, Respondent.

No. 20951.

United States Court of Appeals District of Columbia Circuit.

Argued May 24, 1967.

Decided Dec. 8, 1967.

Petition for Rehearing En Banc Denied Jan. 31, 1968.

Certiorari Denied April 22, 1968.

See 88 S.Ct. 1414.

Bazelon, Chief Judge, dissented.

Mr. Edward P. Morgan, Washington, D. C. with whom Mr. Gerald S. Rourke, Washington, D. C., was on the pleadings, for the petitioner.

Mr. William O. Bittman, of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, for respondent. Asst. Atty. Gen., Fred M. Vinson, Jr. and Mr. Frank Q. Nebeker, Asst. U. S. Atty. entered appearances for respondent. Miss Beatrice Rosenberg and Mr. Paul C. Summit, Attorneys, Department of Justice, were on the pleadings for respondent.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

On March 17, 1965, petitioner testified before a grand jury in the District of Columbia investigating the affairs of Robert G. Baker. In separate indictments returned on January 5, 1966, Baker was charged with several offenses, and petitioner was accused in three counts of perjury allegedly committed in the course of his grand jury testimony.[1] On March 28, 1966, petitioner, invoking amended Rule 21(b) of the Federal Rules of Criminal Procedure[2] anticipatorily, moved for a transfer of his case to the District of Nevada,[3] wherein he resides,[4] or to some nearby district and, failing that, for a continuance to a date subsequent to Baker's trial. District (now Chief) Judge Curran denied the motion for transfer, without prejudice, for prematurity, and granted the continuance requested.

The Baker trial ended in a conviction on January 29, 1967, from which an appeal is pending. District Judge Gasch, the respondent here, on February 17, 1967, reheard and on April 11, 1967, denied the motion for transfer, elucidating his reasons in an unpublished opinion. Petitioner now seeks a writ of mandamus, asserting that Judge Gasch ignored a likelihood that prejudicial pub-

---

1. Count 9 of the Baker indictment named petitioner and Wayne L. Bromley as co-conspirators with Baker in an alleged scheme to falsify, for federal income tax purposes, the incomes of Baker and Bromley during 1963 and 1964, in part by causing First Western Financial Corporation, a Nevada corporation of which petitioner was an officer and director and in which he had a substantial stock interest, to make certain payments, represented by 12 checks, to Bromley as a conduit to Baker. Petitioner's indictment charged that he testified falsely when he told the grand jury that he had not caused any payments of that character to be made (count 1), when he denied having had any conversation in Bromley's presence wherein the payment of money to Baker was discussed (count 2), and when he stated that Bromley had been retained as a lawyer to perform services with respect to legislation and had furnished legislative materials to petitioner (count 3).

2. The effective date of the amendment of F.R.Crim.P. 21(b) was July 1, 1966. The text of the rule appears in note 24, *infra*.

3. For grounds the motion stated that "Rule 21(b), as amended, Federal Rules of Criminal Procedure, requires that the instant case be transferred for the convenience of the parties and witnesses and in the interest of justice," and that "[i]t is improbable that the defendant can be fairly tried in this jurisdiction by reason of prejudicial considerations stemming from the charges made in the indictment." When the motion was first presented, and prior to the 1966 amendment of F.R.Crim.P. 21(b), transfers pursuant to that rule could be made only to a district or division in which venue of the prosecution was proper. See note 15, *infra*. Since the offenses charged in petitioner's indictment were committed, if at all, only in the District of Columbia, the motion could not satisfy the multi-venue condition imposed by the rule in its then form. The amendment eliminated this requirement. See note 24, *infra*.

4. Petitioner, a former Lieutenant Governor of Nevada, lives in Las Vegas and engages in law practice there. The record discloses, however, that he has interests elsewhere in the United States and abroad in connection with which he travels extensively.

licity may adversely affect a trial in the District of Columbia, and that his evaluation of the convenience of the parties and the witnesses, a dominant factor under amended Rule 21(b), was "arbitrary and unfair." The order petitioner desires would either change the venue for trial or direct reconsideration of the motion in the light of criteria responsive to that rule.[5] We find these contentions unacceptable, and deny the petition.

## I

Since our call to test the action on the motion by Rule 21(b) comes so close to its revision, we must apply its present provisions without the benefit of a background of prior judicial interpretation which more usually than not is available. We find, however, that our task is eased when the language of the new rule is consulted in the light of its evolution from the old. Thus our treatment of the issues confronting us has its beginning in history.

■ The Constitution ordains the trial of offenses against the United States in the state and district of alleged commission.[6] Surely in general operation "[t]he provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." [7] Yet, scarcely a generation ago, the geographical coincidence of the offense and the prosecution left a great deal to be desired in particular instances. Although the Fifth Amendment secures the right to a fair trial,[8] and the Sixth the right to an impartial jury,[9] no method of removing the case was then available, even where prejudice in the locality of the crime made an unbiased verdict quite impossible.[10] And in consequence of spatial distribution of the elements of the offense, the Government was frequently presented a choice as to place of trial which almost uniformly was denied to the accused.[11]

■ The Criminal Rules, which became effective in 1947, implemented the

5. Petitioner seeks alternatively a direction for the grant of a further continuance, which was denied concomitantly with Judge Gasch's refusal to transfer, until completion of appellate proceedings in Baker's case. Petitioner contended in support of this request that count 9 of the Baker indictment is inconsistent with count 1 of his indictment, see *supra* note 1, and that Baker's conviction, if upheld, will exonerate petitioner on that count. Judge Gasch was "not persuaded" by this argument and saw "no useful purpose in further continuing this case which has already been in an active status for more than a year" in consequence of the continuance petitioner obtained earlier. We doubt seriously that mandamus is an available remedy to compel a continuance, see Ex parte Wagner, 249 U.S. 465, 471–72, 39 S.Ct. 317, 63 L.Ed. 709 (1919); General Houses, Inc. v. Bruchhausen, 256 F.2d 674 (2d Cir. 1958), and in any event perceive no abuse of discretion in this ruling.

6. U.S.Const. art. III, § 2, cl. 3 provides that "[t]he Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been committed." U.S. Const. amend. VI requires trial "by an impartial jury of the State and district

wherein the crime shall have been committed."

7. United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958).

8. Thomas v. District of Columbia, 67 App. D.C. 179, 183, 90 F.2d 424, 428 (1937); Vandegrift v. United States, 313 F.2d 93, 96 (9th Cir. 1963). See also In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

9. Singer v. United States, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948); United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

10. Cummings, The Third Great Adventure, 29 A.B.A.J. 654, 655–56 (1943), quoted in Advisory Committee's Note ¶ 1 to F.R. Crim.P. 21 (original version), in turn quoted *infra* note 17.

11. "Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal fa-

constitutional mandates[12] but introduced a degree of flexibility of which the accused might optionally avail.[13] Among the innovations were provisions for inter- or intra-district transfer on motion of the accused upon either of two dissimilar occasions. Rule 21(a) required a change of venue when community prejudice forestalled a fair trial locally.[14] Rule 21(b), in its original form, authorized removal when, but only when, an offense was committed in more than one district or division and the trial judge found that "in the interest of justice" the proceedings should be relocated to another district or division where venue could have been laid.[15] The constitutional rationale for these procedures was the accused's waiver, by his motion for the transfer, of his right to trial where the offense allegedly occurred.[16]

The objectives these provisions were designed to achieve are evident. Rule 21(a) was intended to rectify a deficiency in the law by affording the accused an opportunity to avoid provincial emotion so intense as to doom the objectivity of the trial.[17] Judicial constructions of the rule in its original form attested both the high standard it

vorable to the prosecution." United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944).

We may, however, readily dispose of any notion that the Government, in instituting the instant prosecution in this jurisdiction, was exercising an option as to where the proceedings would occur. Venue in a perjury case lies properly only where the perjurious statement is supposed to have been made. The offenses with which petitioner is charged afforded the Government no choice, and no possibility to shop for a forum.

12. "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." F.R.Crim.P. 18. Although this rule was amended in 1966, the provision quoted appears in both versions.

13. F.R.Crim.P. 19 (original version) (intra-district transfers), rescinded effective July 1, 1966; F.R.Crim.P. 20 (original version) (inter-district transfers for plea and sentence); F.R.Crim.P. 21 (original version) (transfer from the district or division for trial). See also F.R.Crim.P. 18 (1966 amended version): "The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses."

14. "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division if the court is satisfied that there exists in the district or division where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that district or division." F.R.Crim.P. 21(a) (original version).

15. "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged." F.R.Crim.P. 21(b) (original version).

16. "The rule provides for a change of venue only on defendant's motion and does not extend the same right to the prosecution, since the defendant has a constitutional right to a trial in the district where the offense was committed, Constitution of the United States, Article III, Sec. 2, Par. 3; Amendment VI. By making a motion for a change of venue, however, the defendant waives this constitutional right." Advisory Committee's Note ¶ 3 to F.R.Crim.P. 21 (original version).

17. "This rule introduces an addition to existing law. 'Lawyers not thoroughly familiar with Federal practice are somewhat astounded to learn that they may not move for a change of venue, even if they are able to demonstrate that public feeling in the vicinity of the crime may render impossible a fair and impartial trial. This seems to be a defect in the federal law, which the proposed rules would cure.' Homer Cummings, 29 A.B. A.J. 655; Medalie, 4 Lawyers Guild R. (3) 1, 5." Advisory Committee's Note ¶ 1 to F.R.Crim.P. 21 (original version).

set and the defendant's responsibility to meet it.[18] Rule 21(b) shifted from the Government to the court the discretionary exercise by which the choice of venue would finally be determined.[19] It exacted, too, a demonstration that in honoring the request for transfer the ends of justice would truly be served.[20]

Both sections of Rule 21 were amended in 1966. Through deletion of previous references to divisions,[21] transfers under Rule 21(a) are now confined to situations where the accused is able to demonstrate inability to obtain a fair and impartial trial anywhere the court might lawfully sit within the district.[22] And the changes made in Rule 21(b) were much more substantial.

As previously stated, Rule 21 in its original form authorized a transfer for reasons other than local prejudice only in multi-venue cases, and then only to a district or division in which venue was also proper. Irrespective of the degree of inconvenience incidental to trial where venue was exclusive, it was not possible to remove the case to a place in which no part of the offense was committed.[23] And in situations where a transfer was permitted, there was no assurance that it would run to the most convenient forum.

It was to avoid just such difficulties, and the harsh results sometimes occasioned, that Rule 21(b) was rewritten. The most significant change was the elimination of the multi-venue requirement; another was the restatement of the governing test.[24] Retaining "the interest of justice" and adding "the convenience of parties and witnesses," the 1966 amendment likened the standard in

18. E.g., United States v. Carper, 13 F. R.D. 483 (D.D.C.1953); United States v. Dioguardi, 20 F.R.D. 33, 35–36 (S.D.N. Y.1956); United States v. Mesarosh, 13 F.R.D. 180, 185–86 (W.D.Pa.1952). See also Bailey & Golding, Remedies for Prejudicial Publicity—Change of Venue and Continuance in Federal Criminal Procedure, 18 Fed.B.J. 56 (1958), and cases cited therein.

19. "The effect of this provision would be to modify the existing practice under which in such cases the Government has the final choice of the jurisdiction where the prosecution should be conducted. The matter will now be left in the discretion of the court." Advisory Committee's Note ¶ 2 to F.R.Crim.P. 21 (original version).

20. See Lindberg v. United States, 363 F. 2d 438 (9th Cir. 1966); United States v. Luros, 243 F.Supp. 160, 174 (N.D. Iowa), extraordinary relief denied (8th Cir.), cert. denied Luros v. Hanson, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965); United States v. United States Steel Corp., 233 F.Supp. 154, 156, 160 (S.D.N.Y.1964).

21. Conformably with a 1966 amendment to F.R.Crim.P. 18 eliminating division venue. The 1966 amended version of F. R.Crim.P. 18 is: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses."

22. "The defendant is given the right to a transfer only when he can show that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in the district. Transfers within the district to avoid prejudice will be within the power of the judge to fix the place of trial as provided in the amendments to Rule 18." Advisory Committee's Note ¶ 1 to F.R.Crim.P. 21 (1966 amended version). The amendment also removed the obstacle encountered in United States v. Parr, 17 F.R.D. 512, 519 (S. D.Tex.1955); see also Parr v. United States, 351 U.S. 513, 76 S.Ct. 912, 100 L. Ed. 1377 (1956), by making plain the court's authority to select transferee district.

23. In Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), it was held that venue for trial of a violation of the National Labor Relations Act § 9(h), consisting in the execution in Colorado of a false affidavit and from there mailing it to the Board in Washington, D. C., lay exclusively in the District of Columbia, although all witnesses were located in Colorado.

24. F.R.Crim.P. 21(b) (1966 amended version) provides: "For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district."

criminal cases to its civil counterpart.[25] With these criteria met, the court derived a discretion to transfer to any district, whether or not associated with the offense in any way.

But while the amendment makes transfer a possibility in far more cases through elimination of the venue precondition, it did not otherwise create an essentially new yardstick by which requests for removal are to be judged. No major enlargement of authority to transfer flows from the present specification of "the convenience of parties and witnesses," for that was an important factor in ascertaining "the interest of justice" under the original rule.[26] And we find nothing in the history or language of the rule to indicate that "the interest of justice," independently of "the convenience of parties and witnesses," embraces more than its pre-amendment components.

## II

Addressing petitioner's first contention, we note that, contrarily to the position taken initially,[27] he now concedes that the "prejudice" upon which the motion was partly premised is not of a type or degree as would preclude the drawing of an impartial jury for his trial in this jurisdiction. Nor, as his counsel with commendable candor admits, is it an existing bias, or one which will accrue other than vicariously through Baker. It is, rather, an aura which petitioner feels is likely to arise during the course of his trial, through unfavorable publicity he feels will "inevitably attend"

---

25. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It will be noted that civil cases may be transferred only to a district or division wherein jurisdiction and proper venue obtain. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L. Ed.2d 1254 (1960).

Cases holding that § 1404(a) confers a broader discretion to transfer civil cases than was traditionally available under the doctrine of *forum non conveniens* are inapposite to the problem here. They reflect merely the consideration that a lesser showing of inconvenience warrants a transfer than can justify a dismissal.

26. In Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243–244, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964), the Court assumed, without deciding, that in considering "the interest of justice," valid factors include "(1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be invloved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer."

Compare the listing in United States v. Amador Casanas, 233 F.Supp. 1001, 1003

(D.D.C.1964): "[T]his Court must consider the rights of the Government, the accused, and the public; curtailment of unnecessary expense; relative cost to the parties involved; their possible embarrassment by reason of absence from their place of business for extended periods of time; length of time of the trial and the comparative condition of the dockets of both courts; and also the relative cost and hardship because of the removal of records into another jurisdiction."

27. The earlier motion for continuance was predicated on the assertion that petitioner "will be gravely prejudiced should he be tried before Robert G. Baker and most certainly deprived of a critical witness to his defense." The memorandum supporting the motion identified Baker as the potential witness and, pointing to the connection between count 9 of the Baker indictment and count 1 of petitioner's indictment, see *supra* note 1, urged that publicity incidental to Baker's impending trial would be hurtful to petitioner. The last difficulty, the memorandum stated, would be dissipated in this fashion:

"At the expense of a cliche, however, nothing is so dead as yesterday's news. All experience suggests that, once Baker is tried, the last episode of public moment attending the multifarious charges that have been made concerning him, Robert G. Baker will, relatively, cease to be 'news.' A subsequent trial of Jones (for matter already tried under Count Nine of the Baker indictment) can only be anti-climactic—a case of warmed-over biscuits."

it because of its relationship to the Baker case, which may ultimately involve a sequestration of the jury. He insists that a showing insufficient under Rule 21(a), reliance upon which he disavows, commands respect under Rule 21(b), on which his motion for transfer rests.

Petitioner's bid is grounded on the charge that Judge Gasch gave "no consideration whatever" to this factor, a contention which in turn is based simply on the fact that the judge's opinion delineating his ruling does not mention the subject. We cannot accept this argument. Because the briefs and oral arguments presented to the judge in support of and in opposition to the motion were so largely directed to the matter, it would have been difficult indeed for him to have ignored the point. More importantly, to the extent that the situation remains ambiguous, we abide the presumption that the argumentative submissions were suitably weighed.[28] And in any event, the claim of prejudice was not eligible for consideration under Rule 21(b).

We have pointed out that Rule 21(a) was promulgated to supply a method by which an accused victimized by strong community feeling might be relieved through a change of trial venue. The formulation of Rule 21(a) includes an explicit standard to be met in order that there may be a transfer on this account.[29] Rule 21(b), on the other hand, is devoted to an entirely different group of independently justified considerations which may support removal—those relating to "the convenience of parties and witnesses." Petitioner, however, would splice the two subdivisions by inclusion in "the interest of justice" provision of the present Rule 21(b) of circumstances relevant to but insufficient to sustain a Rule 21(a) motion.

We know of no basis upon which the pre-1966 Rule 21(b) could have been given that construction. And we have already expressed our view that the criteria for transfer under the old and the new Rule 21(b), except for the deletion of the multi-venue requirement, remain much the same. We have found no evidence that new Rule 21(b) was intended to expand radically the "interest of justice" standard which survived from the old; we have seen nothing to suggest that, although coupled with "the convenience of parties and witnesses," "the interest of justice" now embraces substantially more or less than it did before. It is clear to us that the amendment, rather, was designed to explicate a category of factors—pertinent only to the convenience of trial participants—which were already recognized as vitally involved in any determination as to the direction in which the ends of justice lay.[30]

■ Moreover, Rule 21 is to be construed in the light of past and contemporary practice respecting claims of local community prejudice. Transfer of the proceedings is but one method of combatting the evil once its existence has been definitely ascertained. A continuance of the trial, as once was done in petitioner's case on his motion, frequently avoids the need for transfer,[31] so also may the proceedings which occur on a Rule 21(a) motion preliminarily to its grant. "The ultimate question" on such a motion "is whether it is possible to select a fair and impartial jury, and the proper occasion for such a determination is upon the *voir dire* examination."[32] It is then, and more usually only then, that a fully adequate appraisal of the claim can be made, and it is then that it may be found that, despite earlier prognostications, removal of the trial is unnecessary. Jurors manifesting

---

28. Fretz v. Stover, 89 U.S. (22 Wall.) 198, 204, 22 L.Ed. 769 (1874); Reynolds Spring Co. v. L. A. Young Indus., Inc., 101 F.2d 257, 261 (6th Cir. 1939); Lahman v. Burnes Nat. Bank, 20 F.2d 897, 899 (8th Cir. 1927).

29. See notes 17, 21 and 22, *supra*.

30. See note 26, *supra*, and related text.

31. See United States v. Dioguardi, 147 F.Supp. 421 (S.D.N.Y.1956).

32. Blumenfield v. United States, 284 F.2d 46, 51 (8th Cir. 1960), cert. denied 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961).

bias may be challenged for cause;[33] peremptory challenges may suffice to eliminate those whose state of mind is suspect.[34] Frequently the problem anticipated works itself out as responses by prospective jurors evaporate prior apprehensions.[35] These alternatives, which the mechanism of Rule 21(b)—transfer before trial begins—can ill accommodate, are preserved when indicia of community bias are scrutinized within the sphere of Rule 21(a).

■ In sum, we find nothing in the history or language of Rule 21 to indicate that circumstances relevant only to a motion to transfer on account of local prejudice which do not meet the test of Rule 21(a) are to be weighed under Rule 21(b). We are aware of no case adopting the novel theory urged by petitioner. We hold that the standard of Rule 21(a) is the exclusive gauge by which circumstances of that character are to be measured.

### III

Petitioner's motion for transfer was also grounded on the claim that trial of

the case in the District of Columbia would seriously incommode the rather large number of potential defense witnesses. He presented an affidavit designating 69 residents of Nevada and California, and giving their respective addresses and occupations. Of these, 29 were said to be "absolutely essential" to his defense on the merits, and the remaining 40 to be available to avouch his reputation for truth and veracity.[36] The Government's response stated that it anticipated the use of 20 witnesses, of whom 13 reside in this area.

At the hearing, each side indicated in some degree the nature of the evidence witnesses on the merits were expected to furnish. Petitioner undertook a general showing on the materiality of the testimony of most of the witnesses named on his list. These included representatives of a Las Vegas savings and loan association,[37] executives of California savings and loan associations,[38] agents of the Federal Bureau of Investigation, employees of a Las Vegas tele-

33. Swain v. State of Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

34. *Id.* at 211–22, 85 S.Ct. 824. See also United States v. Moran, 236 F.2d 361, 362 (2d Cir.), cert. denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118 (1956).

35. See Black v. United States, 122 U.S. App.D.C. 347, 350, 353 F.2d 885, 888 (1965), vacated and remanded on other grounds, 385 U.S. 26, 87 S.Ct. 190, 17 L. Ed.2d 26 (1966).

36. Among the 40 potential character witnesses are many political, business and religious leaders in Nevada. In the record are letters addressed to petitioner by 30 of the 40 attesting to the inconvenience they would incur in testifying at a trial here. Three of the 30 indicated that it would be impossible for them to appear in the District of Columbia; three more felt that they could not appear during 1966.

37. Count 1 of the indictment charged falsity in petitioner's grand jury testimony that he had not caused any payments to be made by First Western Financial Corporation to Bromley for channeling to

Baker. See note 1, *supra.* Petitioner's counsel told the judge that "[a]t least one half dozen officials of" First Western Savings and Loan Association, a subsidiary of First Western Financial, "are logical and proper witnesses."

38. Petitioner's counsel stated that First Western "did not go along with the Baker * * * approach," and that petitioner's defense would involve the plausibility of what he and First Western did. It may become necessary, he said, "to call witnesses who were otherwise approached on the very same basis * * * and delineate their relevant facts which will most certainly establish plausibility of Mr. Jones' defense if not more." The Government, contesting relevance, contrasted petitioner's written motion, which stated that this testimony is important because of a widespread program for obtaining political contributions from savings and loan associations on the West Coast incidental to the November, 1962, congressional elections, with the indictment, which charges perjury as to allegedly conspiratorial activities occurring between April, 1963 and mid-1964.

phone company[39] and others.[40] In a similar vein, the Government categorized the testimony it anticipated from its witnesses.[41] The presentations also embraced additional circumstances competing for priority in the judicial assessment on the balance of convenience.[42]

In his resolution of the motion, Judge Gasch treated petitioner's Nevada residence as "a factor to be considered," but "not the controlling factor," deriving significance solely from its relationship to the convenience of witnesses, records and counsel.[43] Adverting to the

39. Defense counsel stated at the hearing that "in due course" a motion to suppress Government evidence would be filed. There was electronic eavesdropping in the Baker case, he said, but "[i]n so far as that affects my client, it has not as yet been explored" despite the fact that "we have reason to believe" that there had been similar surveillance of petitioner. He also referred to a Nevada civil suit against several representatives of a telephone company and agents of the Federal Bureau of Investigation in which the agents had claimed executive privilege and refused to testify. In this connection, "at least four agents" and "at least three representatives of the telephone company and probably others" will be required on the motion to suppress. The Government pointed out that the civil case had been pending for more than two years, thus antedating petitioner's indictment, and that no motion to suppress had been forthcoming although this prosecution had been pending for more than a year. We note from the record that no motion to suppress was filed until after the motion to transfer was submitted.

40. Count 2 of the indictment charged that petitioner spoke falsely when he testified that he had not conversed in Bromley's presence about the payment of money to Baker. See note 1, *supra*. The Government contends that conversations on that subject occurred in hotels in Nevada, and petitioner says that "certain witnesses from some of the hotels" are necessary on this account. We can definitely identify two on petitioner's list as falling within that category.

41. The Government's specification at the hearing approximates that in its opposition to the motion wherein it stated:
"The Government now represents to this court that in support of the instant indictment it intends to offer approximately 20 witnesses. Of this number, 13 are presently residing in the Washington, D. C. area.

"Of the thirteen local witnesses, at least four have direct knowledge of the *planning* and *purpose* of the underlying scheme by which it is alleged Jones caused money to be paid to Baker.

"Four other local witnesses will be called by the Government to identify and testify as to various documents which directly relate to the *execution* of the alleged scheme by which Jones caused money to be paid to Baker.

"A local court reporter will be called to introduce the Grand Jury testimony of Clifford Jones which is the basis of this prosecution." (Emphasis in original.)
Apparently none of the Government's witnesses is its employee.

42. In large measure, these are referred to in Judge Gasch's opinion, summarized in the text.

43. For this conclusion, which is not attacked here, Judge Gasch relied, very properly we think, on Platt v. Minnesota Mining & Mfg. Co., *supra* note 26, where the Court, speaking of a motion by a corporate defendant for a transfer under original Rule 21(b), said:

"The fact that Minnesota is the main office or 'home' of the [movant] has no independent significance in determining whether transfer to that district would be 'in the interest of justice,' although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel." 376 U.S. at 245–46, 84 S.Ct. at 772.

While *Platt* involved a corporate defendant, we are unable to read out of its broad language those defendants who are natural persons. See United States v. Ray, 234 F.Supp. 371, 372 (D.D.C.1964); United States v. Cohen, 35 F.R.D. 227, 232 (N.D.Cal.1964); United States v. Luros, *supra* note 20, 243 F.Supp. at 174; United States v. Jessup, 38 F.R.D. 42, 44 (M.D.Tenn.1965). We think, too, that the *Platt* holding survived the amendment of Rule 21(b). The deletion of the multi-venue requirement was designed, not to facilitate removal of the proceedings to the accused's home district simply for the sake of getting it there, but to serve "the convenience of parties and witnesses"; and the "interest of justice" standard, as we have said, remains about the same after the amendment as it did before.

merits witnesses listed by petitioner, he observed that "[n]owhere does the defendant disclose the nature of their expected testimony nor does he provide an adequate basis to enable the Court to determine whether these individuals may even be properly classified as 'witnesses.' " [44] From "the limited disclosure made by the defendant" he had "some doubt whether these 29 individuals will all be necessary witnesses to matters of relevance for the defense." He felt that inconvenience to character witnesses was not so impressive a factor as the size of the group might suggest because of the court's discretion to reasonably limit their number.[45]

Moreover, as the judge pointed out in ruling, 13 of the Government's 20 prospective witnesses reside in this area, and all relevant books and records are located here. A transfer, he said, would necessitate the selection of new Government counsel, and a lag incidental to a fair opportunity for new counsel to become acquainted with the case and to prepare for trial. Conversely, the judge stated, "there is no adverse factor of delay in this district," and a definite trial date can be assigned as soon as the disposition of pretrial motions could be completed. In sum, he did "not feel that the defendant has demonstrated a sufficient balance of inconvenience to himself to warrant the removal" sought.

We do not discount the importance, in the decision of motions of this type, of constant vigilance to safeguard opportunities for full presentation of the defense,[46] nor do we lose sight of the value of character witnesses in perjury cases. But it is obvious that some amount of inconvenience—to Government or to petitioner, and perhaps to both— will inevitably accompany petitioner's trial, wherever it might occur. The judge's challenge was to strike the balance truly, and this, we know, is a task all too frequently so difficult and delicate that reasonable minds may plausibly differ on the result. Surely the Government's convenience as well as petitioner's was to be considered; no less certain it is that there was range to prefer testimonial quality over mere quantity.[47] Judge Gasch assigned to the individual factors in competition values we cannot characterize as irrational, and upon weighing them reached a conclusion we do not regard as farfetched. It is not for us to make the decision, which to him alone was confided,[48] and we are not persuaded that we should set his judgment in the matter for naught.

---

44. See Lindberg v. United States, *supra* note 20.

45. Hauge v. United States, 276 F. 111, 113 (9th Cir. 1921). See Levin v. United States, 119 U.S.App.D.C. 156, 164 n. 13, 338 F.2d 265, 273 n. 13 (1964), cert. denied 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed. 2d 701 (1965); Burgman v. United States, 88 U.S.App.D.C. 184, 188–189, 188 F.2d 637, 641–642, cert. denied 342 U.S. 838, 72 S.Ct. 64, 96 L.Ed. 1347 (1951). *Cf.* Manbeck v. Ostrowski, 128 U.S.App.D.C. 970, 384 F.2d 970 (D.C. Cir., July 28, 1967).

We are unwilling to assume, as the dissent apparently does, that Judge Gasch did not consider the convenience of character witnesses. His only specific reference was to the fact that petitioner claimed the availability of 40 such witnesses, and this occurred in the course of his enumeration of the factors on each side of "our 'balance sheet of convenience.' " To this we may add the discretionary function in which he was engaged, and the extraordinary nature of the remedy petitioner invokes here.

46. Petitioner estimates the cost of bringing his witnesses to the District of Columbia at $10,000 to $15,000. We agree with the dissent (*infra* p. 1244) that this is a factor favoring transfer. However, the record discloses that petitioner has extensive gambling interests in Nevada and the Caribbean, and petitioner makes no claim of inability to bear this expense.

47. See Lindberg v. United States, *supra* note 20; United States v. General Motors Corp., 194 F.Supp. 754, 756 (S.D.N.Y.1961). Compare the civil holdings in Glickenhaus v. Lytton Fin. Corp., 205 F. Supp. 102, 106 (D.Del.1962) and Berk v. Willys-Overland Motors, Inc., 107 F. Supp. 643, 644–645 (D.Del.1952).

48. Platt v. Minnesota Mining & Mfg. Co., *supra* note 26, 376 U.S. at 245, 84 S.Ct. 769.

▮▮▮ Motions for change of venue invoke "the sound discretion of the trial court," which "should not be overturned where there is no clear showing of abuse." [49] And mandamus is an extraordinary remedy, " 'reserved for really extraordinary causes' " [50] and exercisable " 'then only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " [51] Only if the decision on transfer rests upon an improper factor,[52] or amounts to a plain abuse of discretion,[53] are we empowered to issue the writ. Appellant does not contend that any element foreign to the inquiry invaded the adjudicatory process,[54] and we find no perversion of the broad authority inherent in that function. We conclude that petitioner did not so plainly carry the day on "the convenience of parties and witnesses" and "the interest of justice" that relief by way of mandamus should now be afforded.

## IV

We come lastly to the position of our dissenting brother that Judge Gasch was not at liberty to "remain silent during petitioner's explicit offers to disclose the nature of his defense, and then deny the motion because disclosure had not been made." [55] We start, as we must, with a brief summary of the events giving rise to this observation.

Judge Gasch conducted a full hearing affording the litigants broad opportunities to support their respective positions, and there was no visible restraint upon the content of the presentations. Early in the proceeding, however, the judge made known his interest in general descriptions of the nature of the testimony which the prospective witnesses would give, ostensibly to enable sagacious decision of the motion. Near the beginning of his argument, petitioner's counsel represented that the defense "may well require all of [its 29] witnesses to testify on the merits of this case," whereupon the judge inquired as to "[w]hat, in general, would these witnesses testify?" [56] Counsel then outlined[57] the testimony he anticipated.[58]

49. Estes v. United States, 335 F.2d 609, 614 (5th Cir. 1964), cert. denied 379 U. S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). See also Dennis v. United States, 84 U.S.App.D.C. 31, 37, 171 F.2d 986, 992 (1948), aff'd 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950); United States v. Amador Casanas, supra note 26; Application of Cohn, 332 F.2d 976 (2d Cir. 1964); Koolish v. United States, 340 F. 2d 513, 527 (8th Cir.), cert. denied 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).

50. Platt v. Minnesota Mining & Mfg. Co., supra note 26, 376 U.S. at 245, 84 S.Ct. at 772 quoting Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

51. Platt v. Minnesota Mining & Mfg. Co., supra note 26, 376 U.S. at 245, 84 S.Ct. at 772, quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943).

52. Platt v. Minnesota Mining & Mfg. Co., supra note 26, 376 U.S. at 244–45, 84 S.Ct. 769.

53. Application of Cohen, supra note 49, 332 F.2d at 977; Scott v. United States, 255 F.2d 18, 20 (4th Cir.), cert. denied 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555 (1958); Kott v. United States, 163 F.2d 984, 987 (5th Cir. 1947), cert. denied 333 U.S. 837, 68 S.Ct. 609, 92 L.Ed. 1122 (1948).

54. True it is, as the dissent mentions (infra p. 1243 n. 1), that the Government improperly argued that it could not obtain a fair trial in Nevada. See Platt v. Minnesota Mining & Mfg. Co., supra note 26, 376 U.S. at 246, 84 S.Ct. 769 (concurring opinion). But it does not appear that Judge Gasch treated it, and petitioner does not urge that he did.

55. Infra p. 1246.

56. The judge later obtained similar information from counsel for the Government.

57. Counsel's explanation of the testimony expected of his witnesses on the merits consumes four pages of the hearing transcript.

58. Counsel's categorized outline is summarized in notes 37 to 40, supra.

On his rebuttal argument, petitioner's counsel several times sought to meet the Government's strenuous challenge to the relevance of the contemplated defense testimonial proffer by representations, rather than more concrete demonstrations, that the testimony would be important. On one such occasion, the representation was coupled with an offer to do more if, but only if, the judge indicated that he wished him to:

"Now, I have represented to the Court, and I repeat, as an officer of this Court, in my honest judgment, we will need the witnesses that we have represented we will need. Now, if that is not enough, and the Court feels that I should go on and delineate at great length what our defense is going to be, I shall be pleased to do it."

Somewhat later, the judge made an inquiry, admonishing "[n]ow, if I am asking an unfair question, kindly ignore it." Counsel nevertheless voiced an answer, expressing the "hope [that] I am not going to be required to go into the defense here," to which the judge responded "Oh, no." Counsel added: "But I represent to the Court in good faith it is an integral part of the defense and a fundamental part of the defense." [59]

A motion to change the venue of a criminal trial invokes an application of the governing criteria to the trenchant facts of the particular case. Rule 21(b) "permits a transfer in any case on motion of the defendant *on a showing* that it would be for the convenience of parties and witnesses, and in the interest of justice." [60] (Emphasis added.) The process involves, not merely a choice between antagonistic assertions as to convenience and justice, but a sound determination by a judge. This responsibility cannot be abdicated to the appraisals of counsel, however earnestly constructed, or discharged by the simple expedient of counting the noses of the witnesses. On the other hand, the showing the motion summons the movant to make certainly does not, as the dissent suggests, require him "to disclose his case." [61]

It is for the accused to make the showing, [62] and for the judge only to decree its sufficiency. We do not conceive the latter's obligation or function on a transfer motion, any more than at other stages of the litigation, to encompass dictation of the scope or depth of the accused's presentation, or periodic announcements as to how well his points have been scored. A venue motion is committed to the sound discretion of the trial judge. In ruling on the motion in this case, we think Judge Gasch conducted himself, affirmatively and negatively, within legitimate bounds, and that his action must be sustained. Certainly there is no abuse of discretion shown requiring the issuance of a writ of mandamus.

Petition denied.

BAZELON, Chief Judge (dissenting):

Petitioner, a Nevada resident, gave testimony before a Grand Jury in the District of Columbia. He was subsequently indicted for perjury. Relying on Rule 21 of the Federal Rules of Criminal Procedure, petitioner sought a transfer of his trial to the District Court in Nevada or some other nearby district. [1]

**59.** With this, we see no basis for the view expressed in the dissent (*infra* p. 1246) that Judge Gasch may have overlooked the proffer to delineate the defense.

**60.** Advisory Committee's Note ¶ 2 to F.R. Crim.P. 21 (1966 amended version).

**61.** *Infra* p. 1246.

**62.** See cases cited *supra* notes 18 and 20. See also United States v. White, 95 F. Supp. 544, 548 (D.Neb.1951); United States v. Olen, 183 F.Supp. 212, 215 (S.D.N.Y.1960).

**1.** In response to the Government's suggestion that it would not get a fair trial in Nevada—an argument which Mr. Justice Harlan has ruled "wholly out of bounds," Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 246, 84 S.Ct. 769 (1964) (concurring opinion)—petitioner's

The District Judge declined to transfer the case. United States v. Jones, 43 F.R.D. 511 (D.D.C.1967).

Petitioner's transfer motion was supported by an affidavit giving the names and addresses of twenty-nine persons all of whom are residents of Nevada or California and each of whom was alleged to be "absolutely essential * * * for the development of my defense upon the merits." Additionally, the affidavit set forth the names and addresses of forty potential character witnesses, including the Governor of Nevada, the Mayor and Chief of Police of Las Vegas, Nevada, and a Justice of Nevada's Supreme Court. Several of these character witnesses, including Nevada's Governor, submitted letters stating that a trial in Washington would be a severe inconvenience and might preclude their appearance. At oral argument before the District Judge, petitioner's counsel estimated that the cost of transporting these witnesses to Washington would be fifteen thousand dollars.

The Government opposed a transfer asserting, *inter alia,* that it would call twenty unidentified witnesses, thirteen of whom were District of Columbia residents.

The District Judge dismissed petitioner's claim that "the convenience of the parties and witnesses, and * * * the interest of justice" required a transfer because petitioner had not "disclose[d] the nature of [the] expected testimony nor does he provide an adequate basis to enable the court to determine whether these individuals may even be properly classified as 'witnesses.'" 43 F.Supp. at 513. Both in the District Court and here, petitioner has maintained that a criminal defendant is not required to disclose his defense in order to secure a transfer. Alternatively, however, his counsel represented:

> as an officer of this Court, in my honest judgment, [that] we will need the witnesses that we have represented

counsel made it clear that he was not insisting on Nevada and that another nearby district, such as Arizona, California

we will need. *Now, if that is not enough, and the Court feels that I should go on and delineate at great length what our defense is going to be, I shall be pleased to do it.* (Emphasis added.)

With all respect, I am uncertain whether this court rules that (a) although petitioner's showing of the relevance and materiality of his witnesses may have been sufficient disclosure, denial of transfer was not an abuse of discretion (see Part III); or, (b) that petitioner's disclosure was insufficient in respects which are not specified. Since I dissent from either view, it is unnecessary for me to consider other issues reached by this court.

**I**

It seems clear from the District Court's opinion that it struck all of petitioner's 29 non-character witnesses from consideration because he had not overcome the court's "doubt whether these 29 individuals will all be necessary witnesses to matters of relevance for the defense." If furnishing the names, addresses and occupations of the witnesses together with "a general showing on the materiality of the testimony of most of the witnesses named" is sufficient, and I am inclined to think that it is, I suggest we are bound to remand with directions to apply this view. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 84 S. Ct. 769 (1964).

Moreover, I think the role of character witnesses is entitled to specific consideration in the balancing process. Of course, a trial court has broad discretion to limit the number of character witnesses that may be called. But I take it as settled that the court cannot prevent the defense from presenting a reasonable number of these witnesses, particularly in a perjury case where this testimony is of unusual importance. In this connection, it is reasonable to consider not only the expense and inconvenience of

or Utah, would substantially ameliorate the inconvenience and expense of a Washington trial.

transporting character witnesses across the country, but the unavoidable dilution of their testimony which naturally attends trial in a distant location. United States v. Johnson, 323 U.S. 273, 279, 65 S.Ct. 249, 89 L.Ed. 236 (1944) (concurring opinion).

Finally, I question whether the Government's claim of countervailing inconvenience is supported by the record. The District Court relied on the Government's statement that it will call 20 witnesses to prove its case, 13 of whom are District of Columbia residents. But it appears that the presence of all may not be required:

> THE COURT: How many witnesses would the Government have?
>
> MR. BITTMAN: Approximately 20, and several of these relate only to documents. Some of the Las Vegas people will have to be called only to put in the vouchers and the checks relating to the First Western transaction.
>
> This probably could be disposed of by stipulation. The witnesses have already testified in the Baker case and the exhibits already entered in the Baker case.
>
> Another witness would be the Court reporter that transcribed Clifford Jones' grand jury testimony. The only witness of any length that I believe would testify would be Wayne Bromley.

On rebuttal, however, petitioner's counsel stated:

> Now, Mr. Bittman made a reference here to the fact that he had a great many witnesses that he could get through with in a great hurry, those who had formal matters to care for, like the reporter at the Grand Jury.

> That is no problem. I will stipulate with you on that.
>
> The records you talk about, the checks, I will stipulate with you on that. Sure the checks were issued, no question about it. If that will eliminate the great bulk of your witnesses, fine.
>
> About the only witness I heard him mention—and this comes as no surprise of course—was Mr. Wayne Bromley. I would concede the Government is going to have Mr. Wayne Bromley in connection with this case. If it is transferred, they might have to transport one witness out of the District of Columbia.

In sum, petitioner says he has a large number of California and Nevada residents who will testify; the Government says it has some "Las Vegas people" who will testify together with a number of District of Columbia residents; and the petitioner has offered to stipulate as to formal matters which may eliminate the bulk of the ·Government's District of Columbia witnesses. Since the District Court did not even mention this proffer in its carefully written effort to strike the "balance sheet of convenience," it is conceivable that the court inadvertently overlooked the proffer.[2] I would, therefore, remand for reconsideration.

## II

On the other hand, if the court believes the disclosure of name, address, occupation and a general showing of materiality is insufficient, I respectfully suggest that there is need to lay down the principles which require more.

Whatever may be the merit of incorporating the open disclosure contemplated by the civil rules, such a policy has not yet found its way into the criminal process [3] and, generally speaking, nei-

---

2. The Government's opposition in this court, filed on behalf of the District Judge, stated: "As to the so-called offer to disclose testimony, government counsel does not recall such an offer nor does the opinion of the [district] court mention one." We are advised that the court reporter who transcribed the argument in the District Court was ill, and the transcript of that argument was not filed until the District Judge had prepared and filed his memorandum opinion.

3. See generally, Brennan, The Criminal Prosecution: Sporting Event or Quest

ther the prosecutor nor the defendant is required to disclose his case in advance of trial.[4] Whether, in order to prevail on a Rule 21 transfer motion, a defendant must disclose the nature of his defense is a question I find exceedingly difficult. On the one hand, it may fairly be argued that frivolous and dilatory transfer requests are deterred by a disclosure requirement.[5] On the other hand, a disclosure requirement, with its constitutional ramifications,[6] raises troublesome problems. A not dissimilar dilemma arose under Rule 17's requirement of "a satisfactory showing * * * that the presence of the witness is necessary to an adequate defense" before an indigent could obtain a subpoena. See Greenwell v. United States, 115 U.S.App. D.C. 44, 317 F.2d 108 (1963). That rule was amended for the express purpose of obviating these difficulties[7] to permit the defendant to make the necessary showing *ex parte*.

In any event, I do not think the District Court may remain silent during petitioner's explicit offers to disclose the nature of his defense,[8] and then deny the motion because disclosure had not been made. As I have said, the court's failure to even refer to these proffers in its written opinion allows speculation that they were inadvertently overlooked.[9]

Petitioner is free to subpoena these witnesses to a Washington trial. But exercise of his right to compulsory process carries a price tag estimated at fifteen thousand dollars. Rule 21 seems to me designed to eliminate that type of expense and the resulting inconvenience to the witnesses. I fully agree that we are not at liberty to disturb the District Court's ruling simply because, had the discretion been ours, we might have exercised it differently. But we have a duty to ensure that the court applied "appropriate criteria" in exercising this discretion. Platt v. Minnesota Mining & Mfg. Co., *supra*. On the record before us I think that duty requires a remand for further proceedings.

for Truth?, 1963 WASH. U.L.Q. 279; Langrock, Vermont and Criminal Discovery, 53 A.B.A.J. 732 (1967); Louisell, Criminal Discovery: Dilemma Real or Apparent? 49 CALIF.L.REV. 56 (1961); Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.REV. 228 (1964).

4. See United States v. Garsson, 291 F. 646, 649 (S.D.N.Y.1923) (L. Hand, Jr.). In this case, for example, the Government did not set forth the names or addresses of its witnesses in its opposition to petitioner's transfer motion. See 18 U.S.C. § 3432; Dean v. United States, 265 F.2d 544, 547 (8th Cir. 1959).

5. Lindberg v. United States, 363 F.2d 438 (9th Cir. 1966), cited by the court, strikes me as such a case. There, the defendant "asserted that defense witnesses were located in the district to which transfer was sought, [but] the witnesses were not named or otherwise described and the nature of their expected testimony was not disclosed." *Id.* at 438–439.

6. See Mr. Justice Douglas' Statement on the Amendment of the Federal Rules of Criminal Procedure, 86 S.Ct. 236 (1966).

7. Advisory Committee's Notes to Rule 17, F.R.Crim.P.

8. After several offers to disclose the nature of the defense had been made, counsel stated, "As I say, I hope I am not going to be required to go into the defense here," to which the judge replied, "Oh, no." While a trial judge need not make "periodic announcements as to how well [counsel's] points have been scored," this does not meet the need for clarifying the apparent conflict between the court's oral statement at trial that disclosure was not required and the court's subsequent written opinion that it was required.

9. The record shows that, in addition to trial witnesses, petitioner's counsel candidly told the District Judge that a motion to suppress evidence on the grounds of wiretapping would be filed by his client and that the testimony of certain F.B.I. agents would be required on the hearing of that motion. This, of course, explains the presence of F.B.I. agents on petitioner's witness list and I assume that the expense and necessity of summoning witnesses for a suppression hearing, no less than for a trial, is a factor properly to be considered in a transfer motion.